## THE STATE OF IOWA v. KENNEDY.

1. Criminal law: SELF-DEFENSE. A party may repel force by force in the defense of his person, habitation or property, against one who manifestly intends, by violence or surprise, to commit a felony against either; and if, in making such defense, he takes life, the killing is justifiable. But if the assault is not felonious, and there is no reason for a belief on the part of the person assaulted, that the danger is actual and imminent, he is not justified in using a deadly weapon in a deadly manner.

2. —— STATUTE CONSTRUED. Sections 4442 and 4443 of the Revision of 1860, do not change the common law rule, as above stated.

*Appeal from Dubuque District Court.*

WEDNESDAY, JUNE 20.

HOMICIDE: SELF-DEFENSE. — The defendant, and his brother Thomas, were jointly indicted and tried for the murder of Thomas Dolan, in Dubuque, on the 13th day of June, 1865. Plea — not guilty. Verdict against both of manslaughter. As to Thomas, the court sustained a motion for a new trial. The motion of John for a new trial was overruled, and he was sentenced to five years imprisonment in the penitentiary, and to pay a fine of $100 and costs. From this John appeals. The only error assigned, relates to the charge of the court on the subject of self-defense.

The deceased, Dolan, kept a saloon in Dubuque. He was killed by being stabbed with a knife in the abdomen. An outline of the material features of the case, so far as relevant to this appeal, will appear from the testimony of Ryan and Fenton, who were at Dolan's at the time the difficulty began. Ryan testifies that the Kennedys came into Dolan's between ten and eleven o'clock at night. At this time Dolan and a stranger, and Ryan and Fenton, were the only persons present. "The first I knew," says Ryan, "there was a fuss between the Kennedys and Dolan; a

quarrel; when the fuss began the stranger ran out of doors; I was going out after him when one of the Kennedys (Thomas) came right against me; I caught hold of him and took him out of doors; he did not say a word, nor attempt to get away from me; I told him he ought to be ashamed to beat a man in his own house; I heard a voice inside saying *I would get the very same;* Fenton had before left, and gone to the corner of the street; when I heard this threat I got scared, and let this man (Thomas Kennedy) go; after I left the house, I heard the cry of 'murder' three times; it appeared to be Dolan's voice." He then testifies that with others he returned, and returning met the Kennedys, one of them (John) with blood upon his face, and Dolan was found behind the counter insensible from the wound he had received.

On cross-examination the witness cannot say that Dolan was drunk, and says the scuffling between Dolan and Kennedy occupied from ten to fifteen minutes. Fenton testifies that the Kennedys came in; that one of them was very noisy; that Dolan endeavored to have him keep quiet; that a dispute arose; that "Dolan got out of his chair and struck one of them; Dolan went towards the counter; the Kennedys followed him up; they fussed a little while together," and the witness left. He afterwards says that Dolan "followed up the man he struck; that they pursued Dolan, fussing together; blows were struck; *noticed nothing in the hands of either of the men.*" On cross-examination he says Dolan hit the man in the face, but did not observe that he had any glass in his hands.

Dolan, in his dying declarations, implicated *both* Kennedys. Other evidence, which it is not necessary to notice, was given in behalf of the State.

The defendants were examined as witnesses on the trial. Each for the other. John testified that a dispute arose; that Dolan said to Tom, "You lie," and struck Tom in the

The State of Iowa v. Kennedy.

face, and afterwards struck him (John) with a glass across the face. And Thomas gave substantially the same testimony in behalf of John. The Kennedys in their evidence did not deny the stabbing, but John claims that Dolan was getting the advantage of him in the scuffle, and that he used his knife in self-defense. Dolan was stabbed on Saturday evening, and from the wound thus received, died on the Monday morning following.

*F. E. Bissell,* Attorney-General, for the State.

*W. J. Knight* for the defendant.

DILLON, J. — The eighth section of the court's charge (the only portion excepted to by the appellant) was this:

*1. HOMI-CIDE: self-defense.* "A person may repel force by force in defense of his person, habitation or property, against one who manifestly intends or endeavors, by violence or surprise, to commit a known felony on either; and if a conflict ensue in such case, and life is taken, the killing is justifiable. It must be proved that the assault was eminently perilous. And unless there be a plain manifestation of a felonious intent, no assault will justify killing the assailant. A party is not compelled to flee from his adversary, who assails him with a deadly weapon, before he can justify the homicide. The assault may be so fierce as not to allow the party assailed to yield a step without manifest danger to his life, or of enormous bodily injury. In such case, if there be no other way of saving his own life, he may, in self-defense, kill his assailant.

But the rule of law is different when the attack is not felonious. * * * An assault without a weapon of any kind, by a quarrelsome and violent man upon another, when there is no reason for the belief by the person

attacked, that his person was in danger of death or great bodily harm, but that an ordinary battery was all that was intended, and all that he had reason to fear from the acts of his assailant, the party assailed has no right to take the life of such assailant."

It will be perceived that this portion of the charge was taken from the judgment of this court in *The State of Iowa* v. *Thompson*, 9 Iowa, 188. That it is the law, unless changed by statute, admits of no doubt, Fost., 273, 277; 1 East P. C., 272, §§ 44, 273, 45, 221, 7, p. 3; Hawk. P. C., § 23; Id., 87, § 13.

Upon the law of homicide there is no higher authority than Mr. Justice FOSTER. By no other writer have the general principles of the law of self-defense been at once so clearly and concisely laid down. Fost., 273, 277. Speaking of instances like the present, where death has resulted in a case of mutual conflict, he sums up the law as follows:

"He, therefore, who, in the case of a mutual conflict, would excuse himself upon the foot of self-defense, must show that before a mortal stroke given, he had declined any further combat and retreated as far as he could with safety; and also that he killed his adversary through *mere necessity* and *to avoid immediate death*. If he failed in either of these circumstances, he will incur the penalties of manslaughter. Fost., ch. 3, p. 277.

Mr. East lays down the rule somewhat less rigid, as follows: "He must have no other possible, or at least probable, method of escaping his own *immediate destruction, or great bodily harm*." 1 East P. C., p. 221, § 7. And the rule as thus stated by Mr. East, was the one adopted by this court in the case of *The State of Iowa* v. *Thompson*, above cited, and the same rule prevails generally in this country. Further than this, the law cannot be relaxed without ignoring or disregarding the sanctity of human

life; and further than this we have no disposition to go. We reaffirm the case of *The State of Iowa* v. *Thompson*, *supra*.

The defendant contends, however, that the rule as stated in the case last cited, has been changed by sections 4442,

2. — statute construed. 4443 of the Revision. These provide as follows: "§ 4442. Lawful resistance to the commission of a public offense, may be made by the party about to be injured, or by others: § 4443. Resistance sufficient to prevent the offense may be made by the party about to be injured: 1. To prevent an offense against his person: 2. To prevent an illegal attempt by force to take or injure property in his lawful possession."

The defendant's counsel argues thus: "If the offense cannot be prevented except by the killing of the person attempting to perpetrate it, the killing will be justifiable. The statute does not limit the right to resist to a *known* felony, but gives the right to make '*sufficient*' resistance, which includes misdemeanors as well as felonies." Revision, § 4218.

The nature of the resistance, however, must as before, have regard to the nature of the offense about to be committed. Under the statute I may slay a robber or a burglar in my dwelling in the night time as I might at common law. But if one attempt to commit an ordinary assault and battery upon me, or take my goods, or cut down my timber as a *trespasser merely*, or is simply attempting to pick my pocket (1 Hale, 488), though I may justify beating him so as to make him desist, and sufficiently to accomplish the purpose, yet if I make use of a deadly weapon and slay him, I will not stand justified in the eyes of the law. 1 East P. C., 272, § 44; 1 Hale, 485, 486; 1 Hawk. P. C., ch. 28, § 23; *Regina* v. *Smith*, 8 C. & P., 160, per BOSANQUET, J.; *Wilde's Case*, 2 Leo., 214.

The deceased had no weapons. Every person upon

whom he could rely for help, had fled the room alarmed and panic-stricken. The appellant knew his brother was near, even if he was not actually present, aiding and assisting him. The jury has found, under appropriate instructions, that the resort to a deadly weapon was not necessary. That finding is, in our judgment, most clearly supported by the evidence. That the appellant was at least guilty of manslaughter, we entertain no doubt. *The State of Iowa* v. *Decklotts*, 19 Iowa, 447. The most the deceased did was to commit an ordinary assault, one accompanied with no imminent bodily danger, and one which the Kennedys had done much to provoke. The jury should not have been told, as the appellant's counsel has argued they should, that if John Kennedy could not otherwise protect his person from such an assault he was justified in killing Dolan. *The State of Iowa* v. *Neely, ante; The State of Iowa* v. *Decklotts, supra.* Human life in Iowa is not so cheap nor its legal tenure so precarious as such a doctrine would make it.

Affirmed.