BOYKIN v. THE PEOPLE.

1. PRACTICE—WAIVER.

An irregularity in the summoning of a jury in a capital case may be waived by the defendant.

2. SAME.

If the indorsement upon the indictment of the names of additional witnesses and the calling of such witnesses to testify occasions no surprise to the defendant, he cannot be heard to complain that he was thereby prejudiced.

3. INSTRUCTIONS—IMMATERIAL ERROR.

The omission from one instruction of the words " from the evidence," does not constitute reversible error, when, by other instructions, the jury are told that their findings must be based upon the evidence, and that alone.

4. SAME—REASONABLE DOUBT.

It is safer and better practice, when requested to instruct concerning reasonable doubt, to give such instruction in the language of one approved by this court than to attempt to state the same. thought in other language.

5. SAME—CONDUCT OF DEFENDANT.

The jury may be instructed that, in determining the credibility of the defendant in a criminal case, testifying in his own behalf, they have a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct during the trial.

6. CRIMINAL LAW—SELF DEFENSE—RETREATING TO THE WALL.

A police officer who is assaulted by one whom he is lawfully attempting to arrest is not required to retreat to the wall before resorting to such defensive measures as may reasonably seem necessary to protect himself against loss of life or great bodily injury.

*Error to the District Court of Arapahoe County.*

Mr. DAVID G. TAYLOR, for plaintiff in error.

THE ATTORNEY GENERAL, and Mr. CALVIN E. REED, Mr. GEO. H. THORNE and Mr. B. M. MALONE, of counsel, for the People.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

Under an indictment charging him with the murder of

Milton Smith, the plaintiff in error Robert J. Boykin was convicted of murder in the second degree, and sentenced to confinement in the penitentiary for a term of ten years. To this judgment he prosecutes his writ of error in this court, assigning for error numerous rulings by the trial court: *First*, errors relating to the rulings of the court upon defendant's objection to the manner of summoning the jury and to his challenge to the array of jurors therefor; *second*, insufficiency of the evidence; *third*, errors of the court in admitting and rejecting evidence; *fourth*, error in allowing witnesses to testify whose names were not indorsed on the indictment; *fifth*, errors in the instructions to the jury.

1. Early in the month of February, 1895, upon application of the defendant, an order was made by the court setting aside the sheriff, and appointing elisors to act in summoning jurors and throughout the trial. On the following day the court modified the same by substituting the county coroner for the elisors. After these orders were entered, the cause was continued and set for trial on the 18th of the following March.

Upon the day set for trial the defendant interposed his challenge to the array of the panel of jurors, upon the ground that they had been summoned by the sheriff, and not by the coroner, as previously ordered. It appears that the panel in question was summoned generally by the sheriff for service at that term of court, and not specially for this trial. Whether summoned before the order setting aside the sheriff was entered, or thereafter, does not clearly appear. The court overruled the challenge, which ruling is assigned for error.

If there was no waiver by the defendant of this irregularity, the court should have sustained the challenge; but an inspection of the record discloses the fact that the attorney for the defendant, at the time of the hearing of the challenge to the array, expressly stated that the jurors included in said panel were not prejudiced, or illegally drawn or summoned in any other respect than that specified, and there was no

suggestion at all as to prejudice or bias on the part of any of the jury. It further appears from the record that the defendant did not exhaust his peremptory challenges. In view of these facts we are of opinion that the irregularity was waived. As defendant's counsel admits not only the personal qualifications of the jurors, but that, as jurors, in all respects they are unobjectionable, it would be idle to quash the panel, when no possible injury could result to the defendant from selecting a jury therefrom. *Ferris v. The People*, 35 N. Y. 125; *W. W. Electric L. Co. v. Haldeman et al.*, 52 N. W. 892; *Wilhelm v. The People*, 72 Ill. 468; *State v. Gray*, 8 Pac. Rep. 456.

2. The contention of the defendant that the evidence was insufficient to justify the verdict is not tenable. The evidence was conflicting, but there was, to say the least, sufficient evidence, if the jury saw fit to believe it, to justify the verdict.

3. There is nothing in the objection that there was not sufficient foundation laid for the admission of evidence for the people as to deceased's reputation, which had been attacked by defendant. The record discloses that such foundation was laid, though not in that orderly way which should be observed. Neither was there error in refusing to permit defendant to reopen his case after the people's rebuttal evidence was in, nor in the other rulings upon the evidence assigned for error.

4. The court, over defendant's objection, permitted the district attorney, prior to the trial, to indorse upon the indictment the names of two witnesses not thereon when defendant was arraigned, and these witnesses testified. This was not the occasion of surprise to defendant, though he insists that it was; but the record affirmatively shows that he and his counsel knew of these witnesses, and what their testimony would be, and there was no showing below, or reasonable claim here, that defendant did not have ample time to meet this testimony.

5. The fifth instruction given by the court omitted the

words "from the evidence," and from this it is argued that the jury were left to predicate their belief upon something other than the evidence, and that the error was prejudicial. We do not think, however, that the defendant has been prejudiced, because in nearly all of the other instructions the jury are expressly told that their findings must be based upon the evidence, and upon the evidence alone. The mere omission in one instruction of this language is not sufficient to work a reversal. *Gorman v. People*, 17 Colo. 596 ; *Ingols v. Plimpton*, 10 Colo. 535 ; *Salomon v. Webster*, 4 Colo. 353.

6. The sixth instruction to the jury was as follows :

"The law presumes that the defendant is innocent of the crime charged against him in this indictment and it is your duty in considering this case to give him the full benefit of that presumption. *If he is to be convicted at all of either of such crimes it must be upon the testimony which has been produced here upon this trial.*"

Counsel for plaintiff in error concedes that the first sentence in the instruction was correct, but contends that the addition of the words by us italicized was improper. Why they are improper we are not advised. Certainly the effect of the language is to make emphatic the presumption of innocence referred to in the first sentence of the instruction, and it evidently was given for the benefit of the defendant, and its effect on the jury must have been favorable to him.

7. The criticism of the seventh instruction given, as to the definition of reasonable doubt, we think is not sound. Therein the definition, while not exactly in the language of the instruction approved by this court in *Minich v. The People*, 8 Colo. 454, is, nevertheless, in harmony therewith. Where, however (as in the case cited), this court has approved of an instruction relating to "reasonable doubt," and defining those words, it is the safer practice for trial courts to give it, particularly when so asked, rather than to run the risk of expressing the same thought in different language of their own. We say it is the safer practice, because defendant's counsel will acquiesce therein, and it will relieve this

court of unnecessary examination of instructions claimed by one counsel, and denied by the other, to be kindred in meaning to the one already approved.

In the twenty-fourth instruction the court instructed the jury, *inter alia*, that in determining the credibility that should be accorded to the testimony of the defendant, they had " a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct upon the witness stand *and during the trial."* The objectionable part of the instruction is said to be that the jury may consider the demeanor of the defendant *during the trial,* and that such instruction, containing such words, constitutes prejudicial error, and was so held by the supreme court of Illinois in the case of *Purdy v. The People,* 140 Ill. 46, 51, and *Siebert v. The People,* 143 Ill. 571, 593.

The instruction given by the trial court as to that part now under consideration is identical in language with one approved by the supreme court of Illinois in *Hirshman v. The People,* 101 Ill. 568, and also in *Rider v. The People,* 110 Ill. 11. In the subsequent case of *Purdy v. The People,* 140 Ill. 46, an instruction containing the same language is condemned as to the words " during the trial." Again, in *Siebert v. The People,* 143 Ill. 571, the same instruction, omitting, however, the words "during the trial," received the sanction of the court, which, in the immediate connection, refers approvingly to the two cases, *supra,* from the 101 and 110 Illinois, and says that there was no intention in the *Purdy Case* to change the rule of law in said two earlier cases, and that there was no conflict between them and the *Purdy Case.*

A critical examination of the decision in the *Purdy Case* shows that the defendant was the only witness in his own behalf, and this fact, and the further fact that the court was in grave doubt as to the sufficiency of the circumstantial evidence to warrant a conviction, led the court to hold that the instruction did not fully and fairly submit to the jury the question of defendant's credibility. We are unable to har-

monize the decision in the *Purdy Case* with the two earlier cases, unless the former rule announced is to be confined to the peculiar state of facts of that case, and possibly, as so restricted, it might not be objectionable. We are, however, of the opinion that the instruction as given by the trial court in the case at bar is correct, certainly as applicable to the facts of this case. We cannot agree with the argument that the defendant's conduct during the trial of a case and in the presence of the jury is not a proper subject of their observation. Indeed, we know it to be a fact, grounded in human nature, that the conduct of a defendant, or of a party to a suit, during the trial is more or less potential, and has necessarily more or less influence with the court and jury upon the question of his credibility; and it would manifestly be improper to instruct the jury that they should not accord to a defendant's demeanor at such times due consideration as affecting his credibility. So we fail to see why it would be improper, or how it could be avoided, for the jury to be favorably or unfavorably impressed with the defendant's conduct during the trial, the impression depending upon the character of the same. If this be so, we fail to perceive the vice in an instruction telling the jury that they may do the very thing which common experience and common observation teach that the human mind inevitably will do.

The objection that this conduct is not part of the evidence in the case, and therefore the jury must not consider it, is sound in the sense that this conduct cannot be preserved in a bill of exceptions for the inspection of a court of review. But the objection pertains equally to a defendant's bearing upon the witness stand and his manner of testifying, which, unreducible to writing though they be, are always held proper circumstances for the jury to consider in their determination of a defendant's credibility. 'The conduct of the defendant while testifying, and his demeanor during the trial, in the jury's presence, provided he offers himself as a witness, are fit subjects for the jury to consider as affecting the credence to be given to his testimony.

8. A brief statement of the evidence is necessary to a proper understanding of the instructions on the law of self-defense given by the court, and the defendant's objections thereto. The killing was admitted and justified upon the ground of self-defense. The deceased, Milton Smith, was a deputy sheriff of Arapahoe county; the defendant a police officer of the city of Denver. The testimony in behalf of the defendant tended to show that bad blood existed between the sheriff's officers and the police force at and before the time of this killing. On the night in question the chief of police and five of his subordinate officers were standing on Market street near Twentieth street, and a woman walked up to them and asked for a policeman to arrest a man who was threatening her. The defendant responded, and walked across the street to effect the arrest of deceased, and with that purpose in view, as he testifies, he approached the deceased, saying, "I will have to arrest you," at the same time putting his hand on Smith's shoulder. Smith replied, "You can't arrest me," and at once drew his gun, when the defendant struck him with a club once or twice, calling upon Smith to drop the weapon. Another of the policemen promptly appeared and joined in the clubbing. Smith refused to drop his gun, but, as the defendant says, pointed it at the defendant, when the latter, to save his own life, drawing his revolver, shot and killed Smith.

It is but fair to say that the witnesses for the people testified to an entirely different state of facts as to the important particulars, and that there was no necessity for the shooting; and their testimony tended to show that the controversy was provoked by the defendant, and the pretext sought by him, in order to furnish an opportunity for the killing of Smith, or doing him serious bodily injury.

Both the defendant and his counsel unite in saying that the killing was not necessary in order to arrest Smith, but, they claim, solely to save defendant's own life from an attack by Smith. There is evidence in the record tending to establish this defense.

The court had properly instructed the jury upon the law of self-defense upon the supposition that the testimony of the witnesses for the people was true, but it was its duty to instruct upon the opposing theory that the killing was done in necessary self-defense, upon the supposition that the jury might believe the witnesses for the defendant.

Upon this latter phase, and, generally, upon the law of self-defense, the court, among others, gave to the jury instructions numbered 12, 14, and, as bearing upon this particular branch of the case, the last sentence of instruction numbered 21, which are as follows:

Instruction 12:

"The words 'great bodily harm' as employed in these statutes, mean something more than a mere slight injury like a simple assault and battery, from which only a slight injury was likely to be suffered. It means a serious and severe injury of a greater degree, and in order to justify the defendant in killing the deceased, or the use of a pistol in shooting the deceased, the defendant's danger of great bodily harm or danger of his life must have been so *apparent and pressing as that a reasonable person under the circumstances of this case would have reason to believe that he could not otherwise escape the injury threatened or defend himself without shooting the deceased.*"

Instruction 14:

"In order to justify the accused in killing the deceased, Smith, in self-defense, if you find from the evidence that he did kill him, you must be *satisfied* from the testimony that the defendant had reasonable ground to fear that the deceased was about to inflict upon him great bodily harm or to kill him, and that the said Smith was at the time able to inflict upon the defendant such great bodily harm, or to kill him, and that the defendant honestly and seriously believed that he was in such danger, *and that he was not able to escape from such injury or death, or to prevent the same by retreating, or in other manner* than by shooting the deceased, and that he fired the fatal shot for the purpose of so defending himself."

Instruction 21:

"* * * *Before* a person can justify taking the life of a human being on the ground of self-defense he must when attacked employ all reasonable means within his power consistent with his safety to avoid the danger and avert the necessity for the killing."

The portions of the instructions objected to are italicized by us, and the ground of the objection is that this is a statement of the old common law doctrine of "retreating to the wall," which is not applicable to an officer, who does not provoke the assault, and who is lawfully, and in a fit manner, engaged in making an arrest. As to this doctrine of retreat, it may, in general, be safely said that the tendency of the modern cases is greatly to qualify the common law rule. There are, doubtless, cases where it is the duty of the party assaulted to retreat to the wall before taking human life, as, for example, where the case is one merely of simple assault, or where the parties engage in mutual combat, or where the defendant is the assailant, and has not, in good faith, declined further struggle before resorting to self-defense, or has provoked the assault with intent to commit a felony. To this class of cases, we are told, the doctrine is usually applied. 1 Bishop on Crim. Law, secs. 850, *et seq.*, 869, 870; 2 Whart. on Crim. Law (7th rev. ed.), sec. 1019.

But where a defendant is where he has a right to be, as, for example, a police officer engaged in making an arrest, and is assaulted by the deceased in a way that defendant honestly and in good faith believes, and the circumstances being such as would induce a like belief in a reasonable man, that he is about to receive at the hands of his assailant great bodily harm, or to lose his life, the defendant, if he did not provoke the assault, or is not within some of the exceptions above noted, is not obliged to retreat or flee to save his life, but may stand his ground, and even, in some circumstances, pursue his assailant until the latter has been disarmed or disabled from carrying into effect his unlawful purpose; and this right of the defendant goes even to the extent, if necessary, of taking human life.

In a late case decided by the supreme court of the United States (*Beard v. United States*, 158 U. S. 550), the doctrine just noted has been expressly declared.   This, also, is in accordance with the doctrine announced in *Babcock v. The People*, 13 Colo. 515.   We think the court by these instructions required of the defendant more than the law exacts. In so far, therefore, as these instructions imposed upon the defendant, while situate as the defendant claimed he was, the duty of retreat, which meaning and obligation they undoubtedly were intended to, and did, convey to the jury, they are wrong.   Had they been limited or restricted to the case as made by the people's witnesses, or to a case of mutual combat, or where the defendant was the assailant, or, being the assailant, had not endeavored in good faith to decline any further struggle before firing the fatal shot, and to other similar cases, they would have been applicable; but they are not applicable to the case of a police officer engaged simply in doing his duty in making an arrest.   By this we must not be understood as intimating that the evidence for defendant was true; but only as calling for the correct rule of law upon the hypothesis that it was true.

In the fourteenth instruction, while the jury are not expressly told that, when the killing is proved or admitted, the accused must *satisfy* them by his testimony that his defense is a good one, yet it is susceptible of that construction, and ought not to have been given.   In this connection it is improper to use the word "satisfactory."   The defendant is not required to *satisfy* the jury of anything.   If the evidence, though it fall short of producing *satisfaction*, raises a reasonable doubt of defendant's guilt, he is entitled to an acquittal. *Babcock v. The People, supra; Alexander v. The People*, 96 Ill. 96; *Wacaser v. The People*, 134 Ill. 438.

Instructions numbered 17 and 18 in effect state that if the necessity for the killing was brought about by the wrongful act of the defendant, he cannot justify or excuse himself on the ground of such necessity.   In a proper case, where, for example, the wrongful act of the defendant was done with

intent to commit a felony, these instructions would be applicable and sufficient. If, however, the wrongful intent or act was not felonious, but merely done with the intent to commit a simple assault or a misdemeanor, and in the struggle thus brought on the defendant kills his antagonist, while it is true he would not be excused or justified,—therefore not entitled to an acquittal,—yet the defense may properly be interposed as legitimate, and as bearing upon the degree of the homicide, to aid the jury in determining whether it be murder or manslaughter. Inasmuch as the evidence of defendant made a proper case for its application, that exception or qualification should have been given by the court. This doctrine probably was what Mr. Justice Elbert had in mind when, in *Bush v. The People*, 10 Colo. 566, he says: " One's right of self-defense may be abridged or impaired by his own wrongful act." He does not say, however, that this right may, in every case, be altogether lost. To the same point see *People v. Bush*, 65 Cal. 129; *State v. Herrell*, 97 Mo. 105; *People v. Button*, 106 Cal. 628; *State v. Gilmore*, 95 Mo. 554; *Hopkinson v. The People*, 18 Ill. 264; *Kinney v. The People*, 108 Ill. 519; *Menly v. The State*, 26 Tex. App. 274; *Adams v. The People*, 47 Ill. 376.

Instruction No. 31 is inapplicable to the evidence. Possibly it was not prejudicial error, but it should not have been given. It might be good if the killing had not been admitted by the defendant, or if the court had further instructed that it was inapplicable if self-defense was established. A killing may be done purposely and yet be justifiable or excusable, and whether or not the killing in question was so justifiable or excusable was a question which this instruction in no wise aided the jury in determining.

There are many other errors assigned and argued, but upon examination we discover nothing that demands consideration, particularly in view of the fact that at another trial these matters may not again occur. In the light of the evidence it is a matter of regret that this case must be sent back for a new trial. However improbable the story of the

defendant that, to save his own life, he was compelled to take the life of Smith, when he, and a fellow policeman, were engaged in clubbing deceased, with four other policemen visible and within easy call just across the street, still the defendant had the right to the judgment of the jury upon it, aided by instructions of the court correctly stating the law of self-defense in any and every aspect of the evidence. In the main the rulings of the learned trial judge were correct, but for the errors pointed out the judgment must be reversed, and it is so ordered.

*Reversed.*