23 314
24 70
24 102
23 314
25 7
12a 8
12a 526
23 314
f 13a 214
13a 215
23 314
f 27 212
27 213
23 314
28 136
23 314
32 218
e18a 334
23 314
f 19a 411

## RITCHEY v. THE PEOPLE.

1. WITNESSES—DEAF-MUTES.

That difficulty attends the examination of a deaf-mute is no reason why his testimony should be excluded.

2. PRACTICE—MOTION TO STRIKE OUT EVIDENCE.

A motion to strike out all of the testimony of a witness, part of which was admissible, should be denied.

3. FELONY DEFINED.

"Felony," under our constitution, means any criminal offense punishable by death or imprisonment in the penitentiary, and none other.

4. CRIMINAL LAW—SELF-DEFENSE.

The right to kill in necessary self-defense is not limited to cases where the assailant intends to commit a crime of the grade of felony.

5. SAME—INSTRUCTIONS.

The use of the word "enormous" instead of "great," in an instruction defining the bodily harm to prevent which one may justifiably kill his assailant, is improper.

6. SAME.

It is not commendable, in instructions, to attempt a new statement of an old settled rule, or to qualify old, unbroken and well understood expressions of what the law is.

7. SAME—RETREAT.

An instruction that "A party is not compelled to flee from his adversary who assaults him, but before he can justify the homicide, the assault must be so fierce as not to allow the party assailed to yield without manifest danger to his life, or enormous bodily harm. In such case, if there be no other way of saving his own life, or saving himself from great bodily harm, he may in self-defense kill his assailant," is prejudicially erroneous, in that it does not discriminate between the classes of cases wherein the doctrine of retreat to the wall is, and wherein it is not, applicable. And the error is not cured by another instruction by which its application to the facts of the case which the defendant's evidence tended to establish is correctly made.

As to this instruction being prejudicial error, under the facts, Campbell, J., dissents.

### ON PETITION FOR REHEARING.

1. PRACTICE IN CRIMINAL CASES—INSTRUCTIONS.

The practice in criminal cases of giving instructions taken from the reports of states having statutes dissimilar to those of the state wherein the trial is had, condemned.

2. CONFLICTING INSTRUCTIONS—ERROR.

When conflicting propositions of law are given upon a material point, one correct and the other incorrect, the judgment will be reversed. *Clare v. The People*, 9 Colo. 122, cited and approved.

3. BILL OF EXCEPTIONS—WHEN TO BE FILED—LACHES.

A bill of exceptions should be filed during the term of court at which the trial is had, or, if thereafter, within such time as may be granted by the court by order duly entered of record; but the right to strike from the files a bill signed after the term may be lost by laches, although the clerk's record fails to show an order extending the time.

4. SAME.

In a criminal case a delay of four months in filing a motion to strike the bill from the files held fatal to the motion; the attorney general having, in the meantime, appeared and resisted an application for a supersedeas based upon the bill of exceptions, and thereafter, upon an application to modify such order, counsel for plaintiff in error having in the meantime filed abstracts and briefs based upon such bill of exceptions, and the cause having been set down for oral argument upon the merits at the request of the attorney general.

5. EXCEPTIONS TO INSTRUCTIONS.

It is the better practice to require counsel to particularly point out their objections to instructions at the time the same are given; but if this is not done, an exception at the close of a written charge, duly paragraphed and numbered, " to each and every instruction," held sufficient, if allowed in this form by the trial court.

6. DUTY OF PROSECUTING OFFICERS—LEGAL TRIAL.

It is the duty of public officers intrusted with the prosecution of criminal cases to see that no conviction shall take place except in strict conformity to law.

*Error to the District Court of Boulder County.*

Messrs. PATTERSON, RICHARDSON & HAWKINS, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. CALVIN E. REED, of counsel, for the People.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

At the October, 1895, term of the district court of Boulder county, the defendant J. J. Ritchey was informed against for the murder of B. E. Rhodes in said county on the 11th day

of May, 1895. He was tried at the same term, convicted of murder of the second degree, and sentenced to confinement in the penitentiary for a period of twenty years. To reverse the judgment upon this writ of error his counsel rely upon three alleged errors of the district court.

The defendant admitted the killing, and justified under a plea of self-defense. He was the owner of a tunnel and a mine in Boulder county which were under lease by him to the deceased, Rhodes, and McClelland Brown. A forfeiture of the lease was claimed by the defendant for a failure by the lessees to comply with certain covenants, for the breach of which the lessor, by the terms of the lease, might declare a forfeiture and reënter and take possession. The lessees denied this forfeiture.

On the morning of the 11th of May, 1895, during the temporary absence of the lessees, and at an early hour in the day, before they began work, the defendant, in company with three or four of his employés, peaceably entered upon the premises and took possession. When Rhodes arrived a short time thereafter, it appears that he learned of what the defendant had done, and upon his endeavor to go into possession himself and oust defendant and his assistants, and while deceased and defendant were alone in the tunnel and out of sight of the witnesses, the altercation arose in which Rhodes lost his life at the hands of Ritchey.

So far as the record discloses, there is no living witness to the shooting except the defendant himself, and his testimony is that in the endeavor to oust the defendant and regain possession for himself, during the controversy the deceased violently assaulted the defendant with a rock and a knife, and in order to repel the assault and save his own life, which he then believed to be in peril, he, the defendant, fired the shot that killed Rhodes.

While, upon one hand, under the hypothesis that the jury might believe the evidence introduced in behalf of the people tending to show that defendant sought out and provoked the difficulty that he might have a pretext for the killing, an

instruction would have been proper the effect of which was to deprive the defendant of his plea of self-defense; nevertheless, there was evidence before the jury, produced in defendant's behalf, which made pertinent instructions by the court defining the law pertaining to the right of self-defense, especially where at the time in question the defendant was in a place where he had a right to be, and whilst he was engaged in a lawful business, and in defending his person and property. It was necessary, therefore, for the jury to be correctly instructed upon the law of the case, upon the supposition that they might believe the evidence introduced in behalf of the defendant.

The first contention of plaintiff in error is that the evidence was insufficient to justify the verdict. In view of the fact that there must be a retrial of this case, we decline to enter upon a discussion of the evidence further than to say that after a careful examination of the record we find no reason for disturbing the judgment upon this ground.

Another of the errors assigned is that the court improperly received the testimony of Patrick Casey, a deaf-mute, and also, after its admission, erred in not granting the defendant's motion to withdraw it from the jury. The method of examining this witness was by submitting to him written questions to which he replied in writing, and the questions and answers were then read to the jury. His testimony in part related to alleged conversations had between him and the defendant, in which Casey swore that the defendant, some time prior to the homicide, threatened to shoot the deceased.

No objection was made to this testimony as it was given, and not until the district attorney had practically closed his examination in chief. Then counsel for the defendant moved the court to withdraw all the evidence given by the witness, and based their application upon three grounds: *first*, that no exact time was fixed when the threats were made; *second*, because of the difficulty of examining the witness; *third*, because it appeared that the conversation between Casey and the defendant, during which these threats were made, was

through and by the medium of written questions and answers; and before a witness is permitted to testify as to the contents, it should first be shown that the written questions and answers are not to be had in court. The court overruled the motion.

That difficulty attends the examination of a deaf-mute is no reason why his testimony should be excluded. Contrary to the assertion of counsel, the time of the conversation at which the threats were said to have been made the record shows was specifically stated. Assuming, but not so deciding, that such portions of the testimony of Casey as purported to recount the conversation which he had with the defendant concerning the threats were reduced to writing, and hence were inadmissible until proof of loss of the original writing was made, it does not necessarily follow that the court erred in refusing to grant defendant's motion to strike out the testimony. Casey had given important testimony as to other matters. In his testimony defendant claimed that in the previous November his trunk had been broken open, and from it, among other things, was stolen a knife. This knife was found in the tunnel near where Rhodes was killed a few minutes after the homicide, and the defendant testified that it was with this knife that Rhodes made the felonious attack upon him, and that with it Rhodes had in several places cut the defendant's shirt in the attempt to inflict upon him bodily injury, just before the defendant resisted the assault by firing the fatal shot. When Casey was upon the stand he testified that defendant had this knife in his possession and at his house and on his person long after November and until shortly before the homicide, and that during this period of time he, Casey, had often used this knife to sharpen pencils and to trim his nails. It must be borne in mind that this motion went to the entire evidence. If any portion of it was admissible, the motion ought not to have been granted. That the evidence relating to the knife was properly admitted is beyond controversy. The court,

therefore, was not obliged to subdivide the defendant's motion, and its ruling rejecting the same was right.

Upon the foregoing the court is unanimous.

The remaining error argued pertains to the giving by the court of instruction numbered 18, which is in words as follows:

" A person may repel force by force in defense of his person, habitation or property, against one who manifestly intends or endeavors by violence or surprise to commit a *felony* on either; and if a conflict ensue in such case and life is taken, the killing is justifiable, but in case of assault it must be proved that the assault was eminently perilous, and unless there be an apparent manifestation of *a felonious* intent no assault will justify killing the assailant. A party is not compelled to flee from his adversary who assaults him, *but before he can justify the homicide, the assault must be so fierce as to not allow the party assailed to yield* without manifest danger to his life, *or enormous* bodily harm. *In such case, if there be no other way of saving his own life,* or saving himself from great bodily harm, he may in self-defense kill his assailant."

This concerns the right of self-defense, and, in part, goes to the doctrine of retreat. With much vigor counsel for plaintiff in error assert that the vice in this instruction is so glaring that the act of the court in submitting it to the jury was error most harmful. This instruction finds recognition in the authorities (2 Thompson on Trials, sec. 2163; *State v. Kennedy*, 20 Iowa, 569).

The doctrine attempted to be stated by the trial court in this case is laid down in the *Iowa Case, supra,* and thence copied into Judge Thompson's valuable work on trials. The learned author, however, makes certain changes and omissions in the language, and as thus modified, the trial court here gave the instruction which counsel insists but accentuates the error contained in the original. Counsel contend, and this court has already so decided, that this instruction, whether expressed as in the *Iowa Case* or in the language of Judge Thompson, is not, unless taken with certain well understood

exceptions, a correct statement of the law as sustained by the weight of modern authorities. *Babcock v. The People*, 13 Colo. 515; *Boykin v. The People*, 22 Colo. 496.

The portions of this instruction as above italicized by counsel with particularity indicate the objectionable features. Down to the semicolon the first sentence seems to be predicated upon section 1186 of Mills' Ann. Statutes (Gen. Stats. '83, sec. 719), wherein the homicide, in the specified cases, is declared to be justifiable where the deceased manifestly intends to commit a known felony upon the defendant. The rest of the sentence down to the first period introduces the element of assault, as embraced in section 1188 of Mills' Ann. Statutes (Gen. Stats. '83, sec. 721), and, in effect, states, that before the defendant is justified in killing his assailant, not only must the assault be eminently perilous, but there must be an apparent manifestation of a *felonious* intention upon the part of the assailant. Under section 4 of article 18 of our constitution a felony means any criminal offense punishable by death or imprisonment in the penitentiary, and none other.

The criticism upon this particular part of the instruction is that, although under the latter section of our statute a person may kill his assailant if all the other necessary elements are present, not only to save his own life, but, as well, to prevent his receiving great bodily harm, the jury are, nevertheless, told that if the assailant intends merely to inflict upon the defendant great bodily harm (which, under our statute, is nothing but a misdemeanor and punishable by fine or imprisonment in the county jail), the defendant may not resort to self-defense, and may do so only when the assailant intends to commit upon the defendant a crime of the grade of felony.

If, by the use of *felonious*, is meant that the crime which the assailant intends to commit must be of the grade of a felony, this instruction is erroneous. If, however, the court meant merely that the assault must be accompanied by the intent to commit a crime, or with a criminal intent, it was not, in this respect, faulty. The only proper and safe prac-

tice, and one that removes all doubt, in a case like the one before us, in an instruction upon this point, is to state that the defendant not only may resort to self-defense if absolutely necessary to save his own life, but, also, to prevent his receiving great bodily harm.

The second and third sentences, however, are the ones which demand more serious consideration. The use of the word "enormous" instead of the word "great" is disapproved in *McDonald v. The State*, 89 Tenn. 161, and the case was reversed upon that ground. It was there said that "enormous" is a word of richer, deeper color than the word "great," and its use naturally had a tendency to lead the jury to believe that something more than great bodily harm must be apparent. As in the last sentence of the instruction the court here uses the word "great" as apparently synonymous with the word "enormous" (which has authority in Webster's Dictionary), it is possible that the jury were not misled. It is appropriate for us, however, in connection with this and the preceding point, to add with our approval the following language of the court in the *McDonald Case, supra:* "When the path is plain and well marked by long and consistent travel, it is always safe to pursue it, while it is always dangerous to undertake to make a new one to the same end, or to qualify old, unbroken, and well-understood expressions of what the law is."

But the vital objection to this instruction, in our view, is that it seems indiscriminately to apply to the facts of the case the common law doctrine of retreat to the wall. Had the court in apt language limited this doctrine to that class of cases to which it has been held applicable—in which the case as made by the people might be included—the objection made here by the plaintiff in error would not be tenable. But where, as here, in the form of an abstract proposition of law, in terms as relevant to the case made by the defendant as to a case where the provocation was but a mere assault, the jury are instructed that the defendant, in every case, must retreat to the wall before he is entitled to resort to

self-defense, the error is manifest. We have so lately had occasion to determine and enunciate the rule in this jurisdiction, and to discriminate between the classes of cases wherein the doctrine is, and wherein it is not, applicable, that we merely refer to the *Boykin Case, supra*, with our approval of what is therein said.

As to the last proposition the members of this court are agreed that instruction numbered 18 was an incorrect statement of the law. My brethren are of the opinion that it was prejudicial error, for which the judgment should be reversed. In the latter conclusion the writer of this opinion does not concur. His reasons are: Plaintiff in error, by reason of not having, as the writer believes, properly objected and preserved exceptions to the giving of the objectionable part of this instruction, and not having properly assigned error to the said ruling, is not in a position to question the same. Were this not so, still this instruction is but an incorrect statement of the doctrine in the abstract. No attempt is made to apply it to the facts of this case, either as made by the people or by the defendant. In instruction No. 34 is to be found an instruction upon the doctrine of retreat in which the jury are explicitly told, in terms as favorable to the defendant as he could ask, that the doctrine is inapplicable to the kind of a case which is there stated the defendant's evidence tends to establish; and so, while the law in the abstract was incorrectly given, its application to the facts of the case, which defendant's evidence tended to establish, was correctly made.

My brethren, however, are of the opinion that the error was prejudicial, and that by the giving of this instruction the jury may have been, and probably were, misled, or their minds confused, to the extent that the error found in instruction No. 18 contributed to the verdict which they returned.

The judgment, therefore, based upon this verdict, must be reversed, and the cause remanded for a new trial.

*Reversed.*

OPINION UPON PETITION FOR REHEARING.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The defendant was tried and convicted of murder in the second degree and sentenced to confinement in the penitentiary at hard labor for the term of twenty years. Upon review the judgment of the district court was recently reversed in this court, for error in the instructions.

A petition for rehearing has since been filed, together with what counsel designate as a "brief," in support of the same. Although the latter document covers twenty-five pages, it contains no argument tending to show that this court was in error in any one of the three specifications of error pointed out in the original opinion as occurring in instruction No. 18. Notwithstanding the fact that some brief allusion is made in the document to what is termed the "shadowy distinction" between the words "great" and "enormous," it is evident that the so-called "brief" was not filed for the purpose of pointing out any error in our former opinion, as the judgment of the district court was not reversed for the incorrect substitution in the instructions of the word "enormous" for the word "great."

In order that similar errors may be avoided in the future, we will, in this connection, call particular attention to our statute (Mills' Annotated Statutes, sec. 1188):

"If a person kills another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving *great bodily harm*, the killing was absolutely necessary."

Stating the proposition conversely, the law will justify the killing in self-defense by one otherwise without fault, where the danger is so urgent that, in order to save his own life, or prevent his receiving *great bodily harm*, the killing was absolutely necessary. The term "great bodily harm," as here used, is one to which courts and juries in this state have become familiar by frequent repetition and long-continued

usage, and for this reason the language of the statute should not be departed from; and it is particularly dangerous to copy instructions from other states having dissimilar statutory provisions.

It may be instructive, in this connection, to refer briefly to two decisions in other states upon statutes like ours. In the case of *Reams v. The People*, 30 Ill. 256, the trial court substituted for the language of the statute the term "most serious bodily harm," and the supreme court said this required too great a degree of danger, and reversed the case for this and other errors. In *McDonald v. The State*, 89 Tenn. 161, the court reversed a judgment of manslaughter for the reason that the word "enormous" was substituted in the charge for the word "great," as in the case at bar; but in this case the judgment of the district court was reversed for other errors particularly pointed out in our former opinion, at least one of which (that in reference to "retreat to the wall") is more serious than the substitution of the word "enormous" for the word "great." *Babcock v. The People*, 13 Colo. 515; *Boykin v. The People*, 22 Colo. 496; *Beard v. United States*, 158 U. S. 550.

The errors in instruction No. 18 are so apparent upon its face that, as soon as the court's attention was called to the instruction, the writ of error was made to operate as a *supersedeas*. All the members of this court agree as to its erroneous character. In the opinion of Mr. Justice Campbell, instruction No. 34 cures the error occurring upon the doctrine of "retreat to the wall," in instruction No. 18, and for this reason he cast his vote for an affirmance of the judgment of the district court. A majority of the court are, however, of the opinion that it will not do to assume, in case two instructions are given, one correct and the other incorrect, that the jury followed the correct statement of the law. *Clare v. The People*, 9 Colo. 122. Moreover, the latter instruction fails to cover two of the errors occurring in instruction No. 18, as a reading of instruction No. 34 will disclose:

"34. The court instructs the jury that to justify homicide

on the plea of self-defense, it is not necessary that the defendant should have had no other possible or probable means of escaping. A man who is rightfully going about his lawful business is not compelled to employ all the means in his power to avert the necessity of self-defense before he can exercise the right of self-defense. Should you find from the evidence that defendant had possession of the property and yet had reason to believe that if he sought to maintain possession of the tunnel, he would be attacked by another and be compelled in self-defense to kill his assailant, yet he was not required by law to give up possession or leave the premises to avoid the attack."

It is true that an instruction similar to No. 18 was approved by the supreme court of Iowa, in *The State v. Kennedy*, 20 Iowa, 569; but that was a case of mutual combat, and in such cases the rule is not the same as in a case of deadly assault, where the deceased was the aggressor, as is claimed in this case by the defendant. *Boykin v. The People, supra.*

In the document filed by the attorney general the following language appears:

"We search the opinion of this court in vain for any discussion or even mention of the proposition of counsel for the people that there is no bill of exceptions in the record. The opinion is absolutely silent upon this matter, and under these circumstances we are bound to presume, inasmuch as the position of counsel for the people, if well taken, would be conclusive of the case, that the court overlooked this proposition. If the proposition has been overlooked by this court, we can but blame ourselves for not giving greater prominence to this proposition, and for not having urged it with greater force in our briefs as well as in the oral arguments. We shall take care that the matter be clearly presented to the court in this brief."

The attorney general should know why the former opinion of this court is silent upon the matter of the bill of exceptions. It was a matter finally passed upon by the court months before the final hearing, upon a motion to strike,

and it has not since been an issue in the case, although the attorney general, in his final brief, devotes more space to its consideration than is given to all the other issues. One reason for not sustaining the motion to strike the bill of exceptions was, that the attorney general, by his *laches*, had waived his right to have such motion favorably considered. This conclusively appears from the proceedings in this court, viz.:

The transcript and the bill of exceptions were filed in this court on the 26th day of December, 1895, and on the same day we granted a supersedeas upon the errors in instruction No. 18, which instruction appeared only in the bill of exceptions, which the attorney general argued and submitted to the court without any intimation that it was not properly a part of the record in the cause. Thereafter, and on the 27th day of January, a motion was made to modify the supersedeas order, and this motion was argued exhaustively, orally and by printed briefs, upon the bill of exceptions and transcript on file. A written opinion was filed by the court upon the record as then presented. On the 17th day of March a motion was filed by the state to dismiss the writ of error because no abstracts or·briefs had been filed by plaintiff in error. When counsel again appeared, as they did three days later, explanations were made which resulted in the abandonment of this motion to strike, whereupon further time to file such abstracts and briefs was given by consent of the state. At this time counsel for the state asked that the cause be set for final hearing and oral argument, and two days thereafter the cause was accordingly set down for oral argument upon June 1st.

On April 16th counsel for plaintiff in error filed his printed abstracts and briefs, prepared at much labor and expense, and it was not until May 1st that the motion to strike the bill of exceptions was filed. More than four months had then elapsed since the case was lodged in this court, during which time many arguments had been submitted by the attorney general, based on the bill of exceptions, and considered by the court. In these circumstances we are surprised

that any attorney would expect favorable action upon a motion to strike the bill from the files. *Murphy v. Cunningham*, 1 Colo. 467 ; *City of Central v. Wilcoxen*, 3 Colo. 566 ; *Gilpin v. Gilpin*, 12 Colo. 504·; *Greig v. Clement et al.*, 20 Colo. 167.

It is true the court suggested the advisability of applying to the district court for an amendment to the record proper, but it does not seem to have occurred to the attorney general that this may have been for the purpose of avoiding passing upon the *laches* charged against his office. We at that time thought the amendment would certainly be made, and a way thereby opened to settle the matter without embarrassing counsel. This belief was based upon the fact that the district judge had certified into this court, under his hand and seal, a statement of facts which not only justified, but required, such amendment.

As the amendment was not, however, allowed, and as much stress is laid upon such refusal, we shall briefly review the facts, with reference to the action of the lower court in this particular. The case was finally disposed of and the defendant sentenced by the district court on the 10th day of December, 1895. Counsel for plaintiff in error states upon oath that he then asked in open court, and was allowed by the court, ten days in which to prepare and file his bill of exceptions. The attorney general claims that no such order was made, and for this reason the bill of exceptions ought not to have been considered. In support of the position taken by plaintiff in error, he relied upon the following additional facts, viz. :

*First.* The bill of exceptions was prepared at the earliest possible moment, and a special trip made by counsel from the city of Denver to Ft. Collins to procure the signature of the district judge thereto, within the ten days.

*Second.* The bill of exceptions, which was, in fact, certified by the district judge under his hand and seal on, to wit, December 20, 1895, states, *inter alia,* " And forasmuch as the matters above set forth do not fully appear of record,

the defendant has duly and regularly, within the time allowed, tendered this, his bill of exceptions, etc."

*Third.* On May 29, 1896, the following order was made and entered of record:

"STATE OF COLORADO, } ss.   *In the District Court.*
  COUNTY OF BOULDER. }

" THE PEOPLE OF THE STATE OF COLORADO, ⎫
                    VS.                  ⎬
            JOHN J. RITCHEY.             ⎭

" Be it remembered, that upon this, the 28th day of May, 1896, came on for hearing before Jay H. Boughton, judge of the district court of the eighth judicial district of the state of Colorado, the motion of the defendant, John J. Ritchey, for the entry of an order *nunc pro tunc* as of the 10th day of December, 1895, showing that on said date the court made an order allowing and granting to the said defendant ten (10) days within which to prepare and tender to the court his bill of exceptions.

" And thereupon, it appearing to the court from the testimony presented that upon the 10th day of December, 1895, the defendant in open court, excepted to the rulings and judgment of the court that day made, overruling the defendant's motion for a new trial, and sentencing the defendant, and asked for ten (10) days' time within which to prepare and tender his bill of exceptions; and it further appearing *that the court granted the defendant's request for time and so ordered, but that through inadvertence or mistake no entry was made upon the clerk's minutes of the granting of the same ;*

" It is now, therefore, ordered, as of said December 10th, 1895, that the defendant is allowed ten (10) days in which to prepare and tender his bill of exceptions; and it is further ordered that said order be entered *nunc pro tunc*, thereby reserving to the defendant all of his rights the same as if said order had been entered of record at the time it was made.

                [Signed]      " JAY H. BOUGHTON, Judge."
    Certificate of clerk.

It is true that both these papers were procured upon *ex parte* applications; but when the case was again heard, before the same judge, a few days after making the latter certificate, he did not base his refusal to allow the amendment upon any finding that time was not, in fact, given by the court to present the bill of exceptions, as theretofore stated, but said: " Had I any doubt at all as to the justice of this conviction, and as to whether the defendant had received a fair and impartial trial, I might be disposed to look upon this question differently. I had no doubt at all as to these questions. There is no doubt at all in my mind that the defendant has received merited punishment, and the sentence should be carried out." At that time a majority of this court had determined that the defendant had not received a fair trial— a right which Liberty has guaranteed to her children—and had issued a supersedeas. The question of the fairness of the trial was at that very instant before this court for determination, and could not properly have any bearing upon the question as to whether or not time for filing a bill of exceptions had been allowed by the district court of Boulder county. In these circumstances we think that it would have been manifestly unjust and improper to have stricken the bill of exceptions from the files, and thereby have deprived the defendant of a review.

The instructions in the case—thirty-nine in number—are in separate paragraphs and separately numbered. The exceptions to these instructions were taken as follows: " And to the giving of which instructions, and to each and every of them, the defendant, by his counsel, then and there duly and severally excepted." This is the usual and customary manner of taking exceptions where the charge is written out and in numbered paragraphs. Perhaps in three fourths of the cases brought to this court the exceptions are not otherwise taken. That is a better system of practice which requires counsel, at the time instructions are given, to come forward and minutely specify their objections to the same; but we all know that in the haste of *nisi prius* trials this is seldom

done.   We believe that the time of the trial courts could not be spent to better advantage than by requiring counsel, at the time of giving instructions, to specify their objections thereto, giving them time to examine the same in order that errors, if any, may be pointed out and corrected at the trial. Many reversals would undoubtedly be prevented by such a practice.

This court, while condemning the practice which permits exceptions to be reserved as in this case, has never refused to consider such exceptions, if made to instructions duly paragraphed and numbered, although it has refused to review such exceptions where the charge is general and delivered orally.   In the case of *Miller v. The People*, 22 Colo. 530, the charge excepted to was given orally, as a general charge. In *Keith v. Wells*, 14 Colo. 321, and *Edwards v. Smith*, 16 Colo. 529, the instructions were given in the nature of a general charge, and the court held that a simple statement at the close, that counsel desired an exception to each and every instruction, was not sufficient.   These cases proceed upon the basis that an oral charge is not as carefully prepared as a written charge, and that counsel, being listeners, are more apt to detect errors than the court.

The case of *Kansas Pacific Ry. Co. v. Ward*, 4 Colo. 30 (cited by defendant in error), does not sustain his contention.   The court there held that when the instructions are in the nature of a general charge, excepting to each and every of the instructions will not avail; but in that case the instructions refused, being numbered, a like exception was held sufficient.   In reference to the instructions refused, the court says: " They are a series of separate and distinct propositions of law, each standing independent and alone, and against each of which the court was enabled to write on the margin the words ' given ' or ' refused.'   They each enunciated some rule of law which the appellant claimed at the trial should be given.   As it was necessary for the court to either give or refuse them separately, each and every instruction was, therefore, called to the attention of the court, and

the exceptions to the ruling of the court, in refusing to give such instructions, and each and every of them, was held sufficient, although the instructions refused were in that case not numbered."

In the document filed by the attorney general this language occurs:

"It is well understood by the bench, bar and the public at large that, in the majority of criminal cases, the jury have determined upon their verdict of conviction or acquittal long before the instructions of the court are read, and, except in rare cases, where the instructions are more than usually conclusive as to the duty of the jury either to convict or acquit, have little or no weight with the jury or effect upon their verdict. Certain it is that the instructions are not carefully weighed, nor a nice discrimination used by the jury in the jury room to determine the delicate shades of meaning of the words used by the courts in the charge. Courts are altogether too ready to reverse a case where the guilt is plain and the injury arising from an erroneous instruction rests more in conjecture than in probability or solid substantial reason. It is this disposition of courts that produces disrespect and distrust of the courts in the eyes of the people, and induces resort to summary justice."

The statement is on a par with many other reckless statements contained in the document so-called a "brief." We are reluctant to believe that the attorney general would knowingly sanction such assertions, but as he has not disavowed the same, although ample time has elapsed for so doing, we are constrained to believe that he assumes responsibility therefor. It is not well understood, either by the bench, bar, or public, that juries in criminal cases determine upon their verdicts before the instructions are given, and, consequently, before the arguments of counsel. Neither do we believe it to be a fact that they do so predetermine causes where there is a substantial conflict in the evidence, as in this case. The practice of this jurisdiction requires juries to receive the law from the court, and under their oaths they

are bound to accept it as declared by the court, and we do not believe that they intentionally violate such oaths ; and if counsel generally believed that cases are determined before argument, they certainly would not indulge in oral arguments before juries, as is now the usual practice. As to the statement that courts are altogether too ready to reverse a case where the guilt is plain, we do not believe it to be true of courts in general, and it certainly is not true of this court, as counsel might have ascertained by an examination of the Colorado Reports. Aside from this, the argument is unworthy of consideration in a court of justice.

It is to be regretted that the law officers of the state have given much time, of late, to insistence upon matters that are purely technical in the attempt to prevent defendants in criminal cases from having their causes reviewed upon the substantial merits. And we commend the following for consideration, as the opinion of one of the ablest authorities upon the administration of the criminal law :

" It is scarcely necessary to add that a prosecuting attorney is a sworn officer of the government, required not merely to execute justice, but to preserve intact all the great sanctions of public law and liberty. No matter how guilty a defendant may in his opinion be, he is bound to see that no conviction shall take place except in strict conformity to law. It is the duty, indeed, of all counsel to repudiate chicanery and appeal to unworthy prejudice in the discharge of their high office ; but eminently is this the case with public officers, elected as representing the people at large, and invested with the power which belongs to official rank, to comparative superiority in experience, and to the very presumption here spoken of that they are independent officers of state." Section 3003, Wharton on Criminal Law.

*Rehearing denied.*