Patton *v.* The Coen and Ten Broeke C. M. Co., for use, etc.

| | |
|---|---|
| 3 | 265 |
| 3 | 292 |
| 4 | 556 |
| 5 | 39 |
| 5 | 210 |
| 6 | 556 |
| 10 | 100 |
| 3 | 265 |
| 21 | 325 |
| 7a | 463 |
| 3 | 265 |
| 8a | 532 |
| 3 | 265 |
| f 13a | 217 |

1. When a cause is tried without the intervention of a jury, and no exception is reserved to the judgment, the sufficiency of the evidence to sustain the judgment cannot be inquired into. In the absence of such exception, however, this court may consider all assignments of error based upon exceptions properly taken on the trial, not requiring a review of the judgment upon the evidence.

2. An assignment may be made of any property of which the assignor has the actual or potential possession.

3. An agent's authority not coupled with an interest, being revocable at the pleasure of the principal, one dealing with such agent, after notice of revocation, does so at his peril.

4. Where an action is brought by one, for the use of another, it is unnecessary to allege the use, and if alleged, it need not be proved.

5. When a paper is admitted in evidence without objection, it must be held to be admitted by consent of both parties to the action, and to be what it purports on its face.

*Error to Probate Court of Gilpin County.*

The facts are stated in the opinion.

Messrs. H. M. & W. Teller, for plaintiff in error.

Mr. L. C. Rockwell, for defendant in error.

Thatcher, C. J.    This is an action in assumpsit, brought by the defendant in error against the plaintiff in error, for the money claimed to be due to the Coen and Ten Broeke Carriage Manufacturing Company, for the use, etc., for a certain omnibus, lead bar, etc., sold and delivered by the defendant in error, to the plaintiff in error.

The record shows that Patton, through Abbott, a salaried agent of the company, ordered of the company at Chicago, Illinois, in May, 1874, a certain omnibus, etc., of the value of $885, one-half to be paid in cash upon the receipt and acceptance of the omnibus, and the other half in sixty or ninety days, at the option of Patton, with interest at one per cent per month; that the omnibus, and other articles ordered, was shipped by the company, to Patton, in care of Abbott, June 17th, 1874, and were by Abbott received and delivered to Patton, June 29th, 1874; that on the 25th day of said month, at Central City, by an agreement between Abbott and Patton, Abbott receipted the bill for the same, and Patton drew his check for $440 and his note for $445, payable in ninety days, with interest at one per cent per month; the receipted bill, check and note were then deposited with J. S. Reynolds, cashier of the Rocky Mountain National Bank, with instructions to deliver to him, Patton, the receipted bill, and to Abbott, the agent, the check and note, if, upon the arrival of the omnibus, Patton should find it according to order, and accept the same. The omnibus arrived June 29th, and was accepted by Patton. Reynolds then delivered note, check, and receipted bill according to instructions. June 17th, the company drew two drafts on Patton in favor of the First National Bank of Chicago, one for $440, payable at sight; the other for $445, payable sixty days after date, with interest at twelve per cent per annum; and on the same day assigned its account against Patton to said bank by an indorsement on the back of the account. These two drafts were indorsed and transmitted to J. S. Reynolds, cashier, for collection, and presented to Patton for payment and acceptance; the one he refused to pay, and the other to accept, for the reason that he had given the order to the agent for the omnibus, and that he intended to settle with him alone. June 27th, Patton received a telegram from the company requesting him to honor their drafts, and informing him that Abbott had no authority to collect for the company.

This case was tried by the court without the intervention of a jury, and judgment was rendered in favor of the plaintiff. No exception was reserved to the judgment. In the absence of such exception, the fifth, sixth, seventh and eighth assignments of error, relating, as they do, to the sufficiency of the evidence to sustain the judgment, cannot be considered by this court.

By express enactment (R. S., ch. 70, § 22), where the trial is to the court, "the party excepting may assign for error before the supreme court any decision or opinion *so excepted to*, whether such exception relates to receiving improper, or rejecting proper testimony, or to the final judgment of the court upon the law and evidence."

While under this statute the failure of the party aggrieved to except to the final judgment at *nisi prius* precludes the appellate tribunal from reviewing such judgment upon the testimony adduced at the trial (*Phelps* v. *Spruance*, 1 Col. 415; *Liss* v. *Wilcoxen*, 2 id. 85), it does not operate to prevent this court from considering assignments of error based upon exceptions duly reserved during the progress of the trial to the admission of improper testimony, or the exclusion of proper testimony.

As in cases tried by jury, if the aggrieved party fails to move for a new trial he is not held thereby to acquiesce in any of the errors committed during the trial, to which he may have excepted, but may have, under our practice, all such errors considered by the appellate court. *Kansas Pacific R. W. Co.* v. *Twombly's Administrator*, 2 Col. 559. So in cases tried by the court without a jury, in the absence of an exception to the final judgment, the supreme court may consider all assignments of error based on exceptions properly taken at the trial, being inhibited only from reviewing the judgment on the evidence.

In the cases decided by the Territorial supreme court, cited *supra*, the only question passed upon, involving a construction of section 22 of the Practice Act, related to the right of the supreme court to review a final judgment upon the sufficiency of the testimony, where no

exception had been taken to such judgment. The point here decided has not been presented or passed upon by the supreme court of the Territory.

Of the other errors assigned, the only one upon which plaintiff in error seems to rely in argument, and the only one in our opinion worthy of serious consideration, is the second assignment, viz.: "The court erred in admitting drafts or bills of exchange and the account sued on, and attached to the deposition of C. O. Ten Broeke." The objection to receiving in evidence the account sued on, on the ground that there was no sufficient proof of the assignment thereof, is not valid. The authority of C. O. Ten Broeke as secretary of the company to make the assignment for the company is established by his own testimony. But it is argued that the account was not assignable, as there was no claim against Patton *in esse* at the time the assignment was made; that until the acceptance of the omnibus by Patton there was no account due, or to become due, which could be the subject of assignment. This position is, we think, untenable. It was held in *Petch* v. *Tutem*, 15 M. & W. 109, that a tenant may assign his interest in crops to be grown in future years of his term. The future earnings of a railroad company may be assigned. *Bittenbender* v. *Sunbury & Erie R. R. Co.*, 40 Penn. St. 275. In the case last cited, the court says, "it may be remarked that an assignment may be well made of any property of which the assignor has the *actual* or *potential* possession." In the leading case of *Grantham* v. *Hawley*, Hobart, 132, it was held that a party who had an interest in land may grant all fruits that may arise upon it after, and the property shall pass as soon as the fruits are extant, as a person may grant all the tithe-wool he may have in such a year, yet perhaps he shall have none. But a man cannot grant all the wool that shall grow upon his sheep that he shall buy hereafter, for there he hath it neither actually nor potentially." The claim assigned by the plaintiff below had a potential existence, and, therefore, under the authorities just cited, was a proper subject of assignment. It was

an assignment valid in equity, which a court of law will protect. The account, in connection with the testimony of Ten Broeke, was admissible, if for no other purpose, to show Patton's indebtedness to the company.

Whether the drafts being unaccepted operated as an assignment *per se* of the company's demand, or tended to prove such an assignment, is a question upon which the authorities are in great conflict. As in the view we have taken of the case under the pleadings, it is unnecessary to decide this point in order to a just determination of the rights of the parties litigant, we shall not pass upon this question·

Even if there was error·in receiving the drafts in evidence, the error is not of so material a character as to warrant this court in reversing the judgment. If the drafts had been rejected, we are constrained to conclude, from an examination of the entire record, that the court below could not have rendered a different judgment. The error, if error it was, by reason of the introduction of other evidence conclusive of the issues joined, became immaterial, and, therefore, is no ground of reversal. Indeed, under the issues formed, the question for whose use the plaintiff sues is not necessarily raised, and were we to reject all evidence relating to the assignment, the right of the company to recover would in no degree be impaired. In the case of *Zimmerman* v. *Wead*, 18 Ill. 305, in which the declaration alleged that the action was brought for the use of the Illinois Central Railroad Company, says Judge CATON, speaking for the court: "That part of the declaration which declares the use to the Illinois Central Railroad Company is not for the benefit of the defendant, nor has he any thing to do with it, nor is he in any way interested in the declaration of use. That is allowed solely for the benefit of the *cestui que use*, and as between the parties to the action it need not have been inserted." The same doctrine is announced in *Cody* v. *Butterfield*, 1 Col. 385. It thus becomes apparent that even if no assignment of the account had been proved, the plaintiff might still recover, if the payment to Abbott was unauthorized.

The authority of Abbott to act as an agent being neither coupled with an interest, nor given for a valuable consideration, was revocable at the pleasure of his principal. *Hunt* v. *Rousmanier's Adm'rs*, 21 Wheat. 201 ; 1 Pars. on Cont. 69 ; and after notice of the revocation of an agent's authority has been received by a party dealing with the principal, such party must from that time forth, at his peril, deal with the principal alone. In the case of *Fitch* v. *Bunch*, 30 Cal. 208, Bunch, wishing to exchange fifty shares of mining stock for certain real estate, which was the *separate property* of the plaintiff, deposited the stock with one Norton, and the plaintiff and her husband, William Fitch, executed to Bunch a deed of the real estate, and deposited it with Norton, with the understanding that after an examination of the mining property, if it should prove satisfactory, William Fitch should give Bunch an order on Norton for the deed, and Bunch should give an order on Norton for the stock, which on presentation should be respected.'

Both orders were given, but before they were given, the plaintiff commenced suit to restrain Norton from delivering the deed to Bunch ; *Held*, that Norton was a mere depositary ; that he possessed no power with respect to the deed, except as the agent of the plaintiff, and as her agent he was subject to her control ; that she had a right to revoke his authority ; that after such revocation "Norton had no authority to deliver the deed upon the order of the plaintiff's late agent ; and that any attempted delivery would have been futile and would have passed no title, as it would not have been a delivery either by the grantor, or by any one duly authorized by her." It must be borne in mind, in this case, that the company, Abbott's principal, intervened two days prior to the delivery of the check and note, and notified Patton that Abbott's authority to collect was revoked, and thereby in effect prohibited him from assenting to the delivery of the check and note to Abbott.

But it is argued that as the telegram conveying notice of revocation was received without proof of its authenticity,

it is entitled to no weight. Patton himself testified that he received notice on the 27th day of June, A. D. 1874, by telegraph, that Abbott was not authorized to receive the money. To corroborate his statement, he introduced the telegram, which was as follows:

CHICAGO, *June* 28, 1874.
To GEO. A. PATTON.

Honor our drafts, Abbott no authority to collect for us.

(Signed)     COEN & TEN BROEKE C. M. Co.

It does not now lie in the mouth of the defendant, whose evidence it is, to question its authenticity. When a paper goes to the jury, or to the court, as in this case, without objection, it must be held to be admitted by the consent of both parties to the action, and to be what on its face it purports to be.

· June 17th, A. D. 1874, the omnibus was shipped in Chicago to "George A. Patton, Denver, Colorado, care J. S. Abbott, agent." As appears by the company's letter to Patton, dated on the day of the shipment, and introduced at the trial by the defendant, the shipping receipt and the company's account against Patton were, on that day, transmitted to him. Abbott, a salaried agent, was, as the evidence clearly manifests, merely the conduit through which the omnibus was delivered. He had no interest that could in any way be affected by the revocation of his authority to collect. The argument that he had such an interest in the omnibus for freight charges advanced by him, as to entitle him to a lien, is not supported by the facts. It does not appear that he advanced freight charges, but on the contrary, it does appear by his own testimony that he gave the company credit for $885, being the total amount of the bill against Patton, not the amount less freight charges, as it is reasonable to presume he would have done had he made advances. Had the authority been coupled with an interest and, therefore, been irrevocable, it was incumbent upon Patton to show it, which he failed to do. The revo-

cation of Abbott's agency to collect did not operate to prejudice the rights of any of the parties to the transaction. The agent, having no interest growing out of the contract of sale, could lose nothing.

Patton, by receding from the arrangement he had made with Abbott so far as related to the deposited note and check, as it was his duty to do after notice of revocation, would still have been entitled to the omnibus, at the price and on the terms agreed with the company. The relations of the parties were, therefore, such that the revocation could not, under the law, affect the rights of either Patton or Abbott. Before the known revocation of the agency of Abbott, delivery of the note and check to him would have been, as to Patton, a delivery to the principal; afterward it could have no such effect. It then became a mere payment to an unauthorized person and could not be held to extinguish Patton's indebtedness to the company. With full knowledge of the fact that Abbott had no authority to receive payment as agent of the company, Patton, regardless of the rights of, and notice from the company with which he dealt, adopts a course of action which he well knew must operate to divert the money from his vendor. The instructions given to the depositary to deliver the note and check to Abbott, who was known to both Patton and Reynolds as the agent of the company in the premises, were in effect .(after the known revocation of Abbott's agency) instructions to deliver them to the company or its order; but so far as the evidence shows, Patton failed to communicate to the depositary that Abbott was no longer authorized to receive the note and check. On the contrary, without disclosing the revocation of Abbott's agency to collect, he apprises the depositary of his acceptance of the omnibus and leaves him to infer that Abbott is still agent to collect *quoad* that transaction, and, as such agent, entitled to receive the note and check. Under such circumstances, can it be asserted that the payment to Abbott,

wholly unauthorized as he was to receive it, as Patton well knew, satisfied the company's demand against Patton?

We are of opinion that this question must be resolved in the negative. It was a payment at the instance of Patton and in his own wrong, of which he cannot be permitted to take advantage.

Failing to discover any error in the record of a character that would warrant a different judgment in the court below if the cause were to be remanded, we are all of opinion that the judgment should be affirmed.

*Affirmed.*