Chamberlin et al. v. Gilman.

1. The keeper of a boarding-house for railroad employees made an agreement with the railroad company whereby the boarding dues of each employee were deducted from his pay, and forwarded in the form of a check to the boarding-house keeper each month. Subsequently he procured an advance of money from a bank on the credit of the amounts which were to fall due on the following payday, and by promising to turn such amounts over to the bank. The railroad company consented to transfer such payments to the bank. *Held*, that this constituted an equitable assignment of such sums so as to vest title in the bank as against a creditor of the boarding-house keeper, who garnished the same in the hands of the railroad company.

2. Subsequent declarations of the boarding-house keeper indicative of an intention to set apart such sums to the payment of his debt to plaintiff in garnishment are not admissible in evidence to impeach the title vested by the prior assignment.

3. The mere fact that the railroad company, after it had consented to the transfer of the indebtedness to the bank, continued to draw its check in favor of the boarding-house keeper, *held*, not to divest the bank of the title acquired under the equitable assignment.

4. Whether the railroad company had notice of such assignment in no way affects the rights of plaintiff in garnishment, and therefore the admission of evidence of such notice is not prejudicial error.

5. Such an assignment may be by parol, and is not affected by the statute of frauds, which require sales and assignments of goods, and grants or assignments of trusts, to be evidenced in writing.

6. Where the intervenor in a garnishment claims title through an
equitable assignment of the fund, based, in addition to other evi-
dence, upon verbal declarations and conduct, it is not error to refuse
an instruction which assumes that the intervenor's title depends
solely upon a written order.

*Appeal from County Court, Arapahoe County.*

THE facts are stated in the opinion.

Mr. L. C. ROCKWELL, for plaintiffs in error.

Messrs. BENEDICT and PHELPS, for defendants in error.

RISING, C.   The appellants brought an action against
B. M. Gilman upon book-account, and garnished the
Denver, South Park & Pacific Railroad Company as a
debtor of Gilman.   The garnishee answered that it had
$1,495.88 in its hands in checks it had drawn in favor of
Gilman, and that said sum and checks were claimed by
the City National Bank of Denver under some agree-
ment between itself and said Gilman, and asked that the
court make an order that said bank be brought into court
as a claimant for this money, and prove its title thereto.
The bank filed a petition of intervention, in which it
was alleged that Gilman was, at the time of the com-
mencement of this suit, and had been for many months
prior thereto, the keeper of a boarding-house at Como,
on the line of said railroad, and had, during such time,
been accustomed to board divers employees of said com-
pany, but not for the company; that said company, in
consideration that the rates of board should not exceed
a certain just and reasonable rate agreed upon, had
agreed to retain from the pay of its employees boarding
with said Gilman, each month, such amounts as were
severally due and owing from such employees to said
Gilman; that at the end of each month a considerable
portion of the pay of the company's employees was to be
paid over to said Gilman, or, upon his order, to whom he

might direct; that, at least three or four months prior to the service of the said garnishee summons, the said Gilman, being about to procure, by loan, from the said bank, money to enable him to maintain and carry on said business, and in order to secure said bank therefor, gave to the officers of said company orders and instructions to pay to the said bank all moneys due or to become due him under said agreement, and so to continue until otherwise directed, to which said company assented; that said bank, relying on said orders and instructions so given, and said company's assent thereto, advanced and loaned to said Gilman, solely upon the strength of the said orders, etc., $1,500; that said company made payments to said bank as directed, and, upon the faith of such payments having been made, and that they would continue to be made, said bank made other advances and loans to said Gilman; that on the 3d day of April, 1882, while the orders and directions aforesaid were in force, it appeared that there was due to said Gilman, for board of employees of said company for the previous month of March, about the sum of $1,500, which would be paid during said month of April; said bank, at Gilman's request, and relying solely upon the moneys to be paid to it by said company, again advanced and loaned to said Gilman the sum of $1,500, having no other security for said loan than the payment to be made by said company as aforesaid; that, at the time of the service of the garnishee summons, said sum of $1,500 was still unpaid, and said sum of $1,495.88 was still in the hands of said company's officers, but held for said bank; and that the same was about to be paid over to it. Demands judgment for said sum of $1,495.88.

Plaintiffs, answering the petition of the bank, admit that there is a contention between plaintiffs and said bank regarding the right of the money in the hands of the company; admit that there was due from the company to Gilman, for the month of March, at least the

sum of $1,500, and that the company has answered as garnishee in the action, and deny specifically all other allegations.

Judgment in favor of plaintiffs against Gilman upon the pleadings. Trial to a jury of the issues joined between plaintiffs and said bank as intervenor, and judgment thereon in favor of intervenor against the plaintiffs for its costs. From this judgment plaintiffs appeal.

The claim of appellee to the money in controversy rests upon a claimed equitable assignment of the money due Gilman from the railroad company for the board of its employees for the month of March, 1882, under an agreement between said Gilman and said company; and also upon the claim that, at the time of the service of the garnishee summons on the company, the officers of the company held this money as the money of and for the bank. Appellants' claim to the money rests upon the rights of an attaching creditor, and is based upon the claim that no interest in the March indebtedness of the employees of the railroad company passed to the bank by reason of the transactions between Gilman and the bank.

What was the transaction between Gilman and the bank in relation to the loaning of money by the bank to Gilman? The witness Gilman testifies that about the 1st of December, 1881, he made an agreement with the bank to obtain money due him from the railroad company by turning over to the bank money which would be due him on the following pay-day; that he got about $1,500 from the bank; that that sum was due him from the company at the last of the month; that he showed to Mr. Hanna, the cashier of the bank, how much the board-bills amounted to on their face, and that these bills would be likely to be paid about the 20th of the month; that this arrangement was renewed again in January; that in January he told Mr. Hanna that he had to go south on account of his wife's illness, and that

he wished to have this arrangement continued until his return; that his brother, C. S. Gilman, was fully authorized to act as his agent during his absence, and that his brother would go on and do every month just as he had done; that Mr. Hanna wished him to notify the paymaster of the fact that he was going away, and the arrangement was to be continued during his absence, and he said he would do so; that, before he went south, he saw the pay-master, and, in speaking about this arrangement with the bank, the pay-master said he would continue to do as he had done until further orders; that he returned from the south in April. The testimony of the witness Hanna corroborates the testimony of the witness Gilman, and further. shows that Gilman told him how much the pay-rolls were after they were made up; that on the 3d day of April the bank loaned Gilman $1,500; that the money was to be paid during the month; that witness thinks it was for the March indebtedness; that there was no difference between this transaction and previous ones; that the bank got the checks made by the company to Gilman each and every month until April.

We have given the substance of the evidence relating to the transaction of April 3, 1882, between the bank and Gilman, and relating to the facts leading up to that transaction.

In relation to the carrying out of the different arrangements made between Gilman and the bank, the witness Bush testifies that from November, 1881, to April, 1882, he was employed as clerk in the pay-master's office of the Denver & South Park Railroad. That Horace W. Fisher was pay-master, and witness' duties were to assist the pay-master in general. That each head of departments sent in to the time-keeper the time of the men in his employ. That Gilman sent in to the time-keeper any stops he might have against any of the employees. The time-keeper made up his pay-roll, and put against the several parties named the stops as required by Gil-

man; that is, he noted how much was to go from each man to Gilman. These rolls, after they were made up, were forwarded to the auditor at Omaha, examined, and checks made and signed for the several amounts, and the pay-rolls and checks were returned to Denver to the pay-master. When a part of a man's wages had been stopped for his board, a check would come for the amount due him, less the amount of "stop" for board. The amount of the stop would come in a check in favor of Gilman. That he heard Gilman say to the pay-master that he had made an arrangement with the bank to get money on the checks coming to him, and he desired to give the pay-master an order to pay over to the bank, from time to time, the checks coming to him. That, early in the spring, Gilman, who was going down south, came to the office, and told Mr. Fisher that he wanted to give him a continuous order to pay over to the bank the checks regularly, and said that he had authorized his brother Charles Gilman to receive them, and deliver them to the bank, and indorse his name on the back of them. That there were four or five payments before the last payment. That, upon Gilman's order, the pay-master transferred the checks to the bank. They were payable to the bank by Gilman's indorsement. The checks were indorsed by Gilman, and then transferred to the bank by Fisher, and the bank's receipt taken. That he was present when payment was being made in April. That Charles Gilman called for the Gilman checks. That the Gilman checks had been marked paid on the roll, and countersigned by the pay-master, and all but two or three of them had been indorsed by Charles Gilman for his brother Ben when the garnishee notice came into the car. That the transaction in April was conducted as all their payments were previous to that order.

The witness Dunlevy testifies that he was connected with the City National Bank, and had been for three years and over; that he knew of checks being made pay-

able to Benjamin M. Gilman by the South Park Railroad Company, which checks came to the bank during the months of December, January, February, March and April. They were sent to the bank by Mr. H. W. Fisher, or brought by him personally. At no time while the bank was carrying Gilman did he or his brother bring these checks.

We think the evidence shows an equitable assignment by Gilman to the bank of the March indebtedness of the railroad company to Gilman, and that the railroad company had notice of such assignment, and assented to it. The assignment of the indebtedness for the months of November, December, January, February and March was a separate and distinct transaction for each month. At the time of the assignment, in each case, the indebtedness assigned existed, and the amount had been ascertained.

There can be no question but that an assignment can be made of such indebtedness, and that, under our statutes, the assignee takes a legal interest in the matter assigned. *Patton v. Coen and Ten Broeke C. M. Co.* 3 Colo. 265; Pom. Eq. Jur. 1271, 1273. An assignment of a debt may be by parol, and may be inferred from the acts and conduct of the party. 1 Pars. Cont. 229.

In the argument much attention was given to the question of notice to the railroad company of the transfer of the indebtedness by Gilman to the bank. So far as the rights of the parties to this action to the money in controversy are concerned, the question of notice to the company is wholly immaterial. The rights of the parties to this action must be determined by the character of the transaction between Gilman and the bank in relation to this money. If, as between Gilman and the bank, the bank became the owner of the indebtedness, Gilman's creditors could not obtain any interest therein by attachment. The creditor can only reach the interest of the debtor, and after the assignment to the bank Gilman had no interest in this indebtedness. Pom. Eq. Jur. 694, 697,

700. The interest assigned is regarded as property. Pom. Eq. Jur. 1280, note 2. The notice to the debtor, in case of an equitable assignment, is to bind the debtor. In this case, the railroad company, as debtor, had notice and acted upon the notice. The fact that the checks were drawn to Gilman by the railroad company does not change the ownership of the indebtedness. Gilman having assigned his interest therein to the bank, and the railroad company having notice of such assignment, and having assented thereto, could not re-invest Gilman with the ownership by drawing checks for the amount to Gilman. A payment by the company to Gilman would not, under the circumstances of this case, have released the company from its liability to pay the bank. It is plain, from the conduct of Gilman and the company, that the drawing of the checks to Gilman, and getting his indorsement thereon, was a matter relating to the manner of making payment to the bank.

Appellants' counsel cites the fourth subdivision of section 1521 and sections 1523 and 1527 of the General Statutes. We do not think the assignment by Gilman to the bank of the indebtedness of the railroad company to him comes within the statute of frauds.

Under our view of the law applicable to this case, under the evidence, the instruction given to the jury by the court below was more favorable to appellants than they had a right to ask. The instructions left it to the jury to determine from the evidence, not only whether there was an arrangement between Gilman and the bank by which Gilman turned over the indebtedness due him for March, and whether Gilman had ordered the railroad company to pay this money to the bank, but whether Gilman had indorsed the checks, and delivered them to the railroad company, to be delivered by it to the bank before the service of the garnishee summons. The jury were not instructed to find for the bank, unless they found in the affirmative all these facts, and the verdict

for the intervenor amounts to such an affirmative finding. We see no error in the instructions of which appellants can complain.

Plaintiffs asked the court to instruct the jury "that the checks drawn by the railroad company to pay Gilman on March pay-roll of 1882 were never delivered by the company to Gilman or the bank, but the money called for on the same had been paid over, and is now in this court, to be disposed of under its order." The refusal to give this instruction is assigned for error. We think there was evidence sufficient to show a delivery of the checks by Gilman to the pay-master, to be delivered by him to the bank, if such delivery had been necessary to vest the ownership of the money in the bank, and to have given the instruction asked would have been error.

Plaintiffs further asked the court to instruct the jury that the bank "claimed the right to the money by virtue of an assignment of it by Gilman to itself, in and by virtue of a certain written order made by Gilman, and delivered to the South Park Railroad Company in January, 1882. The order is not produced, neither are the contents before you as evidence. Therefore you will not consider what its purport was, and on this branch of the case the intervening claimant has failed to make a case, and you should find for the plaintiffs." The refusal to give this instruction is assigned for error. The instruction asked for is misleading, in that the jury might assume that they were instructed that the bank claimed the money by an assignment from Gilman by virtue of a written order made by Gilman to the railroad company. It entirely ignores all the testimony relating to the transactions between Gilman and the bank. By what right the intervenor claimed the money was a fact for the jury to determine from the evidence. The instruction assumes a fact not proven. There was no evidence of such written order. The instruction was properly refused.

Plaintiffs asked the court to instruct the jury that "if

they believe from the evidence that Gilman attempted in January, 1882, to give an order upon the Denver & South Park Railroad in favor of the City National Bank, to pay whatever money there might thereafter become due for the board of the employees of the said South Park Railroad Company to the bank until such order was revoked by Gilman; and that afterwards, and in April, 1882, the bank loaned $1,500 on the strength of such order given it in January previous,—such order was not an assignment, in law or in equity, of the respective sums of money due from the boarders to Gilman, or from the railroad company to Gilman, as against the attachment of the plaintiffs, and you should find the issues for the plaintiffs Chamberlin & Aicher, as against the said bank." The instruction asked for is clearly erroneous. It seeks to determine the whole case upon an attempt to give a continuous order in January. That order might be held invalid for all purposes, and still, under the evidence, having no reference to that order, the jury might say that it was sufficient to show an assignment of the March indebtedness.

We find no error in the refusal to give instructions asked by plaintiffs.

The first, second, third, fourth and fifth assignments of error are based upon the admission of testimony relating to the notice given by Gilman to the railroad company of his assignment to the bank of the indebtedness of the company to him, and the custom of the company in turning over checks upon order of the payees thereof. As the notice to the company in no way affected plaintiffs' right to the money in controversy, the testimony was immaterial, but, under the evidence and the instructions given by the court, its admission could not have prejudiced the appellants.

The court refused to allow plaintiffs to prove by witness Chamberlin "that, on or about the 15th or 17th of April, 1882, Gilman told witness that he was sorry that

he could not pay the bill; that he was expecting some $1,800 of the railroad company in a day or two, or the next pay-day; and that he was going to take that money, and divide it up between the plaintiffs, John D. Best & Co., and Struby, Estabrook & Co." There was no error in such refusal. Whatever Gilman might say after he had assigned his interest in the March indebtedness could not affect the interest of his assignee. Aside from this, there is nothing in the offer to show that the money he expected from the railroad company was the money due him for board of the employees of the company, but the amount spoken of would indicate that it was not the same. Judgment should be affirmed.

MACON, C., concurs.    STALLCUP, C., dissents.

PER CURIAM.    For the reasons assigned in the foregoing opinion the judgment is affirmed.

*Affirmed.*