Thomson, P. J.
When the record in this canse was lodged in this court, the defendant in error interposed a motion to strike the bill of exceptions from the files, on the ground that it was not tendered or presented to the judge at the time of the rendition of the judgment, nor until after the judge was without power or jurisdiction to sign it. Decision of this motion was reserved until the finai hearing, and, upon application of the plaintiff in error, leave was granted him to file a supplemental transcript of the record. The cause has been argued and submitted; it is now reached for decision by us, but before proceeding to a consideration of the questions presented by the assignment of errors, the motion to strike must be disposed of.
The facts upon which the fate of the motion depends, as we find them in the original and supplemental transcript, are as follows : On the 16th day of February, 1893, during the January term of the court, a verdict was rendered in favor of the defendant in error, who was defendant below, and four days thereafter, at the same term, the plaintiff in error, who was plaintiff below, filed his motion for a new trial. On the 27th day of March following, and before the *210 expiration of the January term, the plaintiff procured an order allowing him four months from that date within which to prepare and tender his bill of exceptions. The motion for a new trial was not disposed of during that term. Afterwards, on June 24, 1893, at the April term of the court, the motion -was taken up and overruled, and judgment entered on the verdict. The April term was adjourned on the 11th day of the following September. On the 25th day of July, 1893, the bill of exceptions was completed, and ready to be tendered, but the judge being absent from Denver, the city in which the court was held, the plaintiff caused the bill to be deposited with the clerk of the court, for the purpose of being presented to the judge for his signature, and the fact, date and purpose of the deposit were indorsed on the bill by the clerk. On January 7, 1895, the judge signed the bill of exceptions.
It is provided by section 385 of the code that in all cases in courts of record, where either party shall except to any ruling, decision or opinion of the court, and shall reduce such exception or exceptions to writing, it shall be the duty of the judge to allow the same, and to sign and seal the same at any time during the term of the court at which such exceptions were taken, or at any time thereafter to be fixed by the court; and it has been held by our supreme court, in Fechheimer v. Trounsteine, 12 Colo. 282, that when the party tenders his bill of exceptions within the time fixed by the statute, or the order of the court, he has performed his duty, and his rights are protected, even though the bill be not actually signed until a time subsequent to the period fixed. The questions upon this motion therefore are: First, was there a tender, or what was equivalent to a tender, of the bill ? And second, if there was, was it made in time ? When the bill was ready to be tendered, the judge was absent from the city. His affidavit, which is before us, shows that he was in the mountains at the head waters of the Rio Grande river, twenty-five-miles or more from railroad or telegraph. In Fechheimer v. Trounsteine, supra, the fact was that when the bill of exceptions *211 was prepared, the presiding judge was absent from the state; and the court held that in such case a deposit of the bill, within the time fixed, with the clerk of the court wherein the cause was tried, together with the indorsement thereon by the clerk of the fact and date of the deposit, would be sufficient to protect whatever rights the litigant would otherwise have in the premises. In that case the judge was absent from the state, and in this, he was within the state, but absent from the city. -We do not think the court attached any significance to the judge’s absence from the state, because it cited in support of its decision the case of People v. Lee, 14 Cal. 510, in which the judge was not absent from the state. The showing was that inquiry was unsuccessfully made for him at the court house, at his chambers, and at his place of residence; and it was held that the clerk’s office was the proper place for the deposit of papers for the judge, in his absence from his chambers. It was the fact that he was not found where he might have been expected to be, and not the fact that he was at any particular place, which authorized the deposit of the bill with the clerk; and so long as the judge is absent from his court and his chambers, we see no reason for a distinction between his absence out of the state, and his absence within the state.
On the 27th day of March, during the term at which this cause was tried, the court made an order allowing the plaintiff four months within which to tender his bill of exceptions. That time would expire on the 27 th of July; but the bill was given to the clerk on the 25th day of July, — two days within the limit, — so that, measured by the order, the time for tender had not expired. But a motion for a new trial had been interposed, and judgment was not entered until the following term. In Stocking v. Money, 14 Colo. 317, in which the code provision we have mentioned was considered, it was held that where no ruling was made upon a motion for a new trial until the term subsequent to the trial, and final judgment was reserved until after the ruling should be made, a bill of exceptions presented within the time allowed by the court at *212 the latter term, was presented in apt time to preserve the entire record. The effect of that decision is that the proper term to sign the bill of exceptions, or to grant time for its presentation, is the term at which the judgment is finally entered; and the bill in this case was presented, by deposit with the clerk, during that term. The judge being absent, the deposit was equivalent to a tender. It was made while the order was in force; it was also made during the term at which final judgment was rendered; and in either case-it was made in time. The motion will be overruled.
The controversy was concerning title to certain mules, carts, scrapers, and other articles, constituting what is called a grading outfit. The plaintiff testified substantially as follows : In 1886, he had a grading contract oh the Colorado Midland Railroad, and gave the defendant, who had previously been in his employ as foreman, in the prosecution of similar work upon other railroads, charge of a portion of this work, under an agreement with the defendant, by the terms of which the latter was to perform the duties óf foreman, was to receive $50.00 per month for himself, was to be charged $30.00 per month for each team of mules, and twenty per cent of the value of the tools for each month’s use of them, as well as the cost of supplies furnished to him, and the wages of the laborers; and was to be allowed as a credit the value of the work done by him. Upon the completion of the plaintiff’s contract, and a settlement had, if it was found that the work done by the defendant realized a profit after deducting the foregoing salary, charges and expenses, the latter was to have the benefit of the gain, and have the privilege of using it, as far as it would go, in the purchase of the tools and animals, in a certain order which had been agreed upon, at prices fixed or to be fixed. Before the completion of the contract, and without a settlement, the defendant quit work, and was proceeding to remove the property, or a considerable portion of it, claiming it as his own.
The testimony of the defendant was that the agreement, under which he took charge of the work, included an abso *213 lute and immediate sale of the entire property to him. The statement of the plaintiff, and that of the defendant, were therefore in direct conflict. According to the former, at the time of the attempted removal, the property was the plaintiff’s ; and according to the latter, the title was in the defend ant. In this state of the evidence, the verdict of the jury, which was for the defendant, would be conclusive upon us, if the questions of fact were properly submitted to them by the court. In the main, we are unable to say that the instructions are open to serious objection. With some unimportant changes in phraseology, we do not see but that the most of them would be fairly accurate. But among a number of instructions which, separately, we would not feel inclined to criticise, was one which we think was pregnant with mischief. That instruction was as follows: “ It is conceded by the plaintiff that if any of the property described in the complaint was purchased by the defendant, he was entitled to retain the possession thereof, and is not accountable therefor in this action.” We are unable to find in the record any such concession. The plaintiff maintained throughout, consistently and persistently, that there was no sale to the defendant, and that there could not be a sale of any portion of the property, until, upon a settlement, it should be ascertained that there was a profit which could be used for purchasing purposes. From that instruction the jury might infer, and could hardly fail to infer, that somewhere in the plaintiff’s testimony there was an admission, or something equivalent to an admission, that there might have been a sale of some part of the property to the defendant. The instruction supposes a confessed uncertainty in the mind of the plaintiff on that point, and asserts a hypothetical concession by him of some kind of title in the defendant. There was neither uncertainty nor hypothesis in the plaintiff’s testimony, and he conceded nothing. If his statements were true, a sale was not supposable. That instruction could not fail to have an injurious effect on the plaintiff’s case.
The learned counsel of the defendant, however, urge two *214 reasons for the affirmance of the judgment, notwithstanding the erroneous instruction. The first is that the instruction was not properly excepted to; and the second, that no exception was reserved to the final judgment.
1. The instructions were in writing. They were given separately, and each was distinguished from the others by a number. The one we have quoted was numbered 4; and immediately following it in the record are the following words: “To the giving of which instruction the plaintiff then and there excepted.” At the close of all the instructions an objection appears, as follows: “ To the giving of each of which instructions the plaintiff duly and severally excepted.” Specific ground of objection was not assigned in either case, and, as we understand counsel’s position, the question is, were the exceptions sufficient without it? In the case of Johnson v. Jones, 1 Black, 220, the court said: “ It is well settled that if a series of propositions be embodied in instructions, and the instructions are excepted to in a mass, if any one of the propositions be correct, the exception must be overruled.” And in consonance with this, it has been repeatedly held by our supreme court that where the instructions given are in the nature of a general charge, exceptions which fail to direct the attention of the court to the portions claimed to be erroneous, are unavailing. Webber v. Fmmerson, 3 Colo. 248; Railway Co. v. Ward, 4 Colo. 30; Keith v. Wells, 14 Colo. 321; MoFeters v. Pierson, 15 Colo. 201. The reason usually given for condemning a general exception to instructions is not that it is not based on specific grounds, but it does not point out the specific part of the charge to which objection is taken. In those cases, the question whether in excepting to an instruction the grounds of the exception must be stated, was not directly passed upon, although we think a fair inference from the language employed would be that they need not be; but in Ritchey v. The People, 23 Colo. 314, the question was finally determined. At page 329, the court, speaking through Chief Justice Hayt, said: “ The instructions in the case — thirty-nine in number— *215 are in separate paragraphs and separately numbered. The exceptions to these instructions were taken as follows : ‘And to the giving of which instructions, and to each and every of them, the defendant, by his counsel, then and there duly and severally excepted.-’ This is the usual and customary manner of taking exceptions where the charge is written out and in numbered paragraphs. Perhaps in three fourths of the cases brought to this court the exceptions are not otherwise taken. That is a better system of practice which requires counsel, at the time instructions are given, to come forward and minutely specify their objections to the same; but we all know that in the haste of nisi prius trials this is seldom done. We believe that the time of the trial courts could not be spent to better advantage' than by requiring counsel, at the time of giving instructions, to specify their objections thereto, giving them time to examine the same in order that errors, if any, may be pointed out and corrected at the trial. Many reversals would undoubtedly be prevented by such a practice. This court, while condemning the practice which permits exceptions to be reserved as in this case, has never refused to consider such exceptions, if made to instructions duly paragraphed and numbered.”
The exception taken in the case before us, at the close of the instructions, differs from the one in Ritchey v. The People, in that it does not contain the words “ then and there,” thus leaving the time at which it was taken in doubt. Whether it, alone, would be sufficient, we do not decide, and it is not necessary that we should. The instruction in question was specially and independently excepted to; the attention of the court was specifically called to it as being objectionable, at the very time it was given; and, following the decision in Ritchey v. The People, we must hold that the exception is sufficient to bring the instruction before us for our consideration.
2. The case was tried by a jury, the judgment was entered upon their verdict, and whether an exception is necessary to a judgment so entered, is the question to be now determined. *216 Section 386 of the code provides as follows: “Exceptions taken to opinions and decisions of the court upon the trial of causes to a jury, or in which the parties agree that both matters of law and fact may be tried by the court, shall be deemed and held to have been properly taken and allowed; and the party excepting may assign for error before the supreme court, any decision or opinion so excepted to, whether such exception relates to receiving improper or rejecting proper testimony, or to the final judgment of the court upon the law and evidence.” From the foregoing language it clearly appears that it is only to opinions and decisions of the court that exceptions are required; and that the judgment to which exception should be taken is the judgment of the court upon the law and the evidence. A judgment entered upon the verdict of a jury is not a decision of tire court. It is not the judgment of the court upon the law and the evidence. The evidence is passed upon by the jury; the facts are found by them; and the questions of law arising in the case are all decided by the court during the progress of the proceedings anterior to the judgment. When a verdict has been rendered, if no motion for a new trial, or in arrest, is interposed, or if such motion, having been made, is denied, the entry of judgment upon the verdict involves no judicial or discretionary power; it is simply a ministerial act, the duty to perform which is peremptory, and whose performance may be compelled by mandamus. High’s Extraordinary Remedies, § 326. In order that a controversy may be decided by the court, and the judgment of the court be a judgment upon the law and the evidence, the cause must be tried by the court; and as no provision is made for an exception to a judgment which is not the judgment of the court upon the law and evidence, there would seem to be no escape from the conclusion that an exception to a judgment entered upon the verdict of a jury is unnecessary.
There are numerous decisions of the supreme court and and this court to the effect that to authorize the review of a judgment upon the evidence, it must have been excepted to; *217 but in every case the trial was by the court without a jury, and the judgment was the decision of the court; and while the precise question presented here was not, in any of them, directly involved, yet, in some, the phraseology used is inconsistent with the supposition that an exception to a judgment is requisite where the trial is by a jury. In Patrick v. Weston, 21 Colo. 73, the court declined to review the evidence upon the record, for the reason that the bill of exceptions did not show that any exception was reserved to the findings and judgment of the trial court; and in Patton v. Carriage Mfg. Co., 3 Colo. 265, the plain effect of the language is to limit the application of the code provision we have quoted, to cases where the trial is by the court. See also, Whitehead v. Jessup, 7 Colo. App. 460.
The general purpose of an exception is to bring into question the correctness of some decision of the court; the office of an exception to a judgment is to challenge the court’s conclusion upon the facts; and we do not conceive that either the spirit or the letter of the statute would justify us in holding that an exception to a judgment is ever necessary, save where, upon a trial without a jury, the facts are found by the court.
For the error in giving the instruction of which we have spoken, the judgment must be reversed.

jReversed.