Bradbury, C. J.
There is no substantial dispute about any fact material to the determination of the respective rights of the parties. The record discloses that William J. Gessner, a merchant at DeGraff, Ohio, in the year 1894, had occasion to institute an action of replevin and in order to indemnify his sureties on the bond he was required to give in the action, assigned to them, a certificate of deposit held by him against The Citizens’ Bank, of DeGraff, Ohio, for $2,124. Gessner was at the time indebted to a number of wholesale merchants for goods purchased of them, and to secure or pay them gave from time to time orders on this fund, which orders were of course subject to the prior right of the sureties to appropriate the fund for their own indemnity pursuant to the purposes for which the fund had been assigned to them. Gessner having- prevailed in the replevin action, the fund was no longer needed for their indemnity, and the claims of the sureties terminated. In the meantime certain creditors of Gessner had reduced their claims against him to judgment. Thereupon a number of them commenced separate and independent actions against Gessner, the Citizens’ Bank, of DeGraff, and others, to subject the fund in question to the payment of the respective judg ments. The several actions were consolidated and *201 the persons to whom Gessner had given orders were made parties and set forth their respective claims by cross-petitions. Among these cross-petitioners was the firm of Edwin B. Robbins & Company, plaintiffs in error. By their cross-petition they disclosed that on February 20, 1894, Gessner executed and delivered to them a promissory note, due four months after date, for $461.91, and that on the fourteenth day of November following (1894) Gessner gave them an order on the bank for its payment. The note and order read as follows:
DeGraff, O., Nov. 14, 1894.
To W. E. Harris, Cashier Citizens’ Bank, DeGraff,
Ohio:
You will please take up my note which may come to your bank, including interest thereon, and pay same out of funds now held by you securing my bondsmen in suit now going on in common pleas court against Chas. W. Krotz et al., when said suit is settled favorable to me releasing my bondsmen.
(Signed,) William J. Gessner.
Exhibit B.
$460.91 DeGraff, O., Feb. 20, 1894.
Four months after date we or either of us promse to pay to the order of E. B. Robbins & Co. four nundred and sixty dollars and ninety-one cents for value received, to bear 8 per cent, interest from date until paid. If the interest is not annually paid, to become as principal and bear the same rate of interest, negotiable a,nd payable without defalcation or discount.
June 20-23. (Signed,) W. J. Gessner,
J. M. Gessner.
*202 Endorsed:
April 4, ’94. Paid two 16-100 dollars . . $ 2.16
February 7. Paid sixty dollars....... 60.00'.
$62.16
Pay Citizens’ Bank, DeGraff, O., for collection.
(Signed,) E. B. Robbins & Co.
On November 16, 1894, two days, after the order was made, Robbins & Co., sent both"the order and the note in question enclosed in a letter to the bank. The bank duly received the letter, order and note, filed the note and order away and retained them until after the actions to reach the deposit had been commenced by the judgment creditors, after which they were returned to Robbins & Co.
When the deposit in question was made the bank became a debtor to Mr. Gessner, the depositor, to the amount of the sum deposited, subject of course, to the rights of the sureties on the replevin bond. And the question to be determined is whether the order involved is sufficient to transfer enough of this debt (or fund) to pay the note which accompanied the order.
The judgment creditors contend first, that the order made to E. B. Robbins & Co. is too indefinite to have any valid operation, and second, that a creditor cannot assign a part of a debt without the consent of the debtor, and that the bank in this case did not consent to the assignment to Robbins & Co. of the share of the fund now claimed by them. The second ground will be first considered.
Doubtless it was at one time the established doctrine, at least at law, that a creditor had no right to split his debt and assign a part of it unless tbe debtor consented to the transaction. This *203 court, however, held quite recently (P. C. C. & St. L. Ry. Co. v. Volkert, 58 Ohio St., 362) that whatever the rule at law may have been, or now is, in equity an assignment of a part of a debt will be upheld without regard to the consent of the debtor. But whether that rule prevails or not is immaterial to the question here, for when in due course of mail the bank received the note and order involved, and filed them away without objection, it should be held to have thereby consented to the assignment. It was a matter of very slight concern to the bank whether it paid the amount of the deposit by a single act to the depositor in person, or whether it was paid at different times to a number of persons to whom parts of it had been assigned, while to the several assignees it might be a matter of the highest concern. Under such circumstances justice and fair dealing require that the consent of the debtor should be inferred from very slight circumstances. No other purpose than to have the note in question' paid out of the fund in the hands of the bank could have actuated Robbins & Co. to procure the order and afterwards send it to the bank together with the note. That purpose the bank must have perceived when the note and order were received by it. With the knowledge of this purpose the bank without objection received the note and order and filed them away. If the bank had not intended to consent to that division of the debt which was necessary to pay the note, its duty was to promptly return the note and order to Robbins & Co. The omission of the bank to pursue this course, together with its action in receiving and retaining the note and order and filing them away, are not circumstances that bear only slightly on the question. On the contrary, they *204 possess a cogency not only amply sufficient to establish the consent of the bank to a division of the fund and payment of the order, but makes any other inference irrational. Therefore, if the order was sufficient in substance to have a valid operation, the right of Robbins & Co. under it should be regarded as complete from the date it was received and filed by the bank. This brings us to a consideration of the order itself.
An inspection of that instrument will show its informality and ambiguity. True it is properly addressed to the cashier of the bank that held the fund in custody, and it clearly discloses the fund out of which it directs payment to be made and that the payment is to be made by the bank, the custodian of the fund. But it contains no description of the note that is to be paid, nor does it name or even designate its holder. The word “note” employed in the order of course means a promissory note. The words of the order, however, in as far as they direct payment could be applied to any promissory note that had been executed by Mr. Gessner, whatever its amount or whomsoever might be its holder, and therefore if it should appear that Mr. Gessner had executed several notes to the same or different parties, no one simply by an inspection of the order could tell which one of the several notes was to be paid or to whom payment was to be made. In these two respects the order in indefinite. This indefiniteness must be removed and the particular note the parties had in view ascertained by evidence de hors the order.
It is a maxim of the law that “that is certain which may be made certain.” If only one note had been made by Mr. Gessner, upon producing that note and showing it to be the only one he had ex *205 ecuted, all uncertainty respecting the note the parties had in view would disappear, for if only one such note ever existed of course the parties must have referred to it. This method of identification was pursued at the trial in the court below. Parol evidence was introduced showing that Gessner had executed and delivered to E. B. Robbins & Co. the promissory note upon which the claim of plaintiff in error was founded, and that it was the only one they held against Gessner when the order in question was executed and delivered to them. This being the case, it was the only note to which the order could apply, and a convincing if not irresistible inference arises that Gessner intended to assign to Robbins & Co. enough of the fund in question to pay it. Therefore, as between Gessner and E. B. Robbins & Co. it would seem that the identity of the note was established, and the note being ascertained the amount intended to be assigned was whatever should be due thereon. In case the parties disagreed about this it would have to be ascertained by the judgment of a court, and when thus established it would in the eye of the law be made certain.
We think, therefore, that the order was sufficiently definite to transfer to Robbins & Co. enough of the fund to pay the amount due thereon. Possibly if the assignment could only have been accomplished by an instrument in writing, reasons might be found to question the conclusions reached.by the court.' We know, however, of no rule of law that requires a written instrument to effect the transfer of a debt by assignment, although that method may be both usual and prudent. Many eases are found in the books that uphold the assignment of a debt or *206 even a part thereof, although not witnessed by any written instrument whatever, or accompanied by a delivery of the possession of the instrument which witnesses the debt. Only a limited number of these cases will be cited: In Chamberlin et al. v. Gilman, 10 Colo., 94, it was held that a parol assignment by a boarding house keeper of his claim against a railroad company for money due him for board of its employes, was valid. Tibbits, Assignee, v. George, 5 Ad. & El., 107, held valid a parol assignment of a right to dividends f rom a bankrupt’s estate. In Heath et al. v. Hall & Porter, 4 Taunt, 326, Lord Mansfield held that a parol assignment of a debt was valid in equity. In Barthol v. Blakin et al., 34 Iowa, 452, it was held that a note and mortgage could be assigned “verbally.” In Clark & Clark v. Gillespie et al., 70 Texas, 513, the court held that a verbal transfer by a contractor of money due him for building a house was valid. In that case only a part of the money due was assigned. In Harris County v. Campbell, 68 Texas, 27, it was held that an assignment of part of a chose in action vas valid in equity. In Noyes v. Brown et al., 33 Vt., 431, a verbal assignment of a fund was held good. In Chapman v. Plummer et al., 36 Wis., 262, a parol assignment of a claim for rent was held valid.
The order being valid it transferred to E. B. Robbins & Co. enough of the fund to pay the note they held. Conceding that it did not become operative until the consent of the bank was obtained, that consent we have shown was given whe'n the bank received and filed away the note and order and that was done a number of days before the judgment creditors began their actions to subiecr, the fund to their judgments. These judgment *207 creditors of Gessner had no lien on the fund in controversy until after their actions to subject it to the payment of their judgments were begun. Miers and Coulson v. The Zanesville and Maysville Turnpike Co., 13 Ohio, 197; Bowry d Sons v. Odell & Bro., 4 Ohio St., 623; Douglass v. Huston et al., 6 Ohio, 156. Consequently their liens were younger and inferior to the lien acquired by'E. B. Robbins & Co., under the order in controversy, and in the-distribution of the fund should have been postponed to it.
By reason of certain indebtedness incurred by Gessner to the bank, there only remained of the fund for distribution the sum of $1,082.80. There is some uncertainty respecting the order of priority which should have obtained between the claims of the plaintiff in error and Liebenthal & Block, but as the fund is sufficient to pay both claims in full the question is not material, and therefore, the judgment of the circuit court in as far as it gave to the claim of Liebenthal & Block priority will not be disturbed. The circuit court found the judgment of W. H. West, James Kernan and U. G* Hahn to be entitled to share in the fund equally, and next after the claim of Liebenthal & Block. The third lien was given to the judgment of Tremain & Sullivan, which exhausted the fund, leaving wholly unpaid the claims of the plaintiff in error, and Klein, Lichtenstader & Co.- acquiesced in this disposition of the fund and the judgment, of the circuit court in as far as it affected their rights is not before this court. ° The right of the other parties can be determined without reference to their claim.
According to the conclusion reached by this court- the decree of the circuit court postponing *208 the lien of the plaintiff in error to that of the judgment creditors, acquired by their actions, was erroneous. The priority of their claim was next after that of Liebenthal & Block. After these two claims were paid the balance of the fund should have been awarded pro rata to the judgments of W. H. West and James Kernan ,and U. G. Hahn, and there not being enough to pay these three judgments, the judgments of Tremain & Sullivan will be left unprovided for.

Judgment reversed.