[No. 2361.]

The Big Hatchet Consolidated Mining Company v. Colvin et al.

1. **Mines and Mining—Right to Follow Dip of Vein.**

The right to follow a vein on its dip into territory belong-

19    405
Case 2
f36S   386

ing to another is dependent upon full ownership of the apex, and the departure of the vein from the side line of the owner's claim, the end lines of which must be parallel.

2.  Mines and Mining—End Lines—Conflicts.

The end lines of a mining claim for the purpose of its extralateral rights are those laid upon the ground when it was located, and the fact that one of them may cross territory belonging to older valid locations is immaterial. The line so laid is nevertheless the end line of the claim for the purpose of securing to it underground or extralateral rights not in conflict with the senior locations.

3.  Instructions—Not Based on Evidence.

An instruction which assumes the existence of evidence which was not given, or submits a question not in the case, is erroneous.

4.  Mines and Mining—End Lines—Conflict—Instructions.

In an action to determine the right of possession of a conflict between two mining claims, where it was not disputed that the end lines of plaintiff's claim as located upon the ground were parallel and that the lode in controversy did enter the claim across its end line, but one end of the claim conflicted with older and valid claims so that the end boundary of plaintiff's claim as conveyed by his patent was an irregular line not parallel with the located end lines, an instruction that the end lines of a claim must be parallel to each other in order to give to the lode location any extralateral right by virtue of its having within its surface area the top or apex of any lode, and that if the lode was shown to have entered the claim at any point except across one of its parallel end lines, and did not in its strike reach either one of said end lines, then plaintiff could not pursue said vein upon its dip beyond the surface boundaries of his claim, was misleading and erroneous, as from such instruction the jury might have supposed the irregular line formed by the older conflicting claims constituted the end line of plaintiff's claim, and not being parallel with the other end line the claim had no parallel end lines, and was therefore entitled to no extralateral rights.

5.  Appellate Practice—Instructions—Exception.

Where the instructions are in writing and are separately paragraphed and numbered, an exception to any paragraph by number without specifically pointing out the objectionable part, is sufficient to present the instruction for review by the appellate court if the instruction thus excepted to contains but one legal proposition or is wholly bad, but if it contains more than

one legal proposition, one or more of which are good, it is insufficient.

*Appeal from the District Court of Gilpin County.*

Mr. Chase Withrow and Messrs. Morrison & DeSoto, for appellant.

Mr. W. H. Davis, for appellees.

Thomson, P. J.

Ejectment by appellant to recover the possession of a lode the top or apex of which, as it alleged, lay within the exterior boundary lines of its Washington lode mining claim, and from which it complained that it had been ousted by the appellees through underground workings from an adjoining claim. The defendants were the owners of the Cook lode mining claim through a patent older than that under which the Washington was held. Both claims were laid in a northeasterly and southwesterly direction; the Cook, however, trending somewhat more towards the north than the other, so that its northwesterly side line, whether located as claimed by the plaintiff or by the defendant, crossed the southeasterly side line of the Washington, approximately 127 feet southwest of the northeast corner of the latter claim, and crossed its northeast end line approximately 32 feet northwest of the same corner. The ground within these lines of conflict was excluded from the Washington patent and belonged to the Cook. Two other claims held under older patents—the Fisk and the Bobtail—encroached for a short distance upon the northeast end of the Washington location, embracing portions of the territory contained within the original location of the Washington, and which were likewise excluded from the Washington patent, so that the northeast boundary of the territory conveyed by that patent was a zig-zag line, which, by reason of the

directions given to the encroaching end lines of those claims, was not parallel with the other end line of the Washington. However, the two end lines of the Washington, as shown by its original location and with reference to which it was described in the patent, were parallel with each other.

The trend of the vein was approximately parallel with the northwest side line of the Cook, and in its downward course extended beyond that portion of the side line of the Cook which was laid within the Washington location, and into the ground conveyed by the Cook patent. The controversy was concerning the ownership of the portion of the vein which so extended into the Cook; the plaintiff asserting that the apex of the vein between the point of intersection of the Cook northwest, and the Washington northeast side line, and the point where it left the Washington ground on the northeast, was wholly within the territory belonging to the Washington; and the defendants maintaining that it was within the territory embraced in the Cook patent. The northwest side line of the Cook, in so far as it lay within the Washington location, was also the southeast side line of the territory conveyed by the Washington patent; but the stakes by which the boundaries of the claims were originally marked, had mostly disappeared, and it was necessary to fix disputed lines by surveys from objects in existence, outside of both claims, and with reference to which the claims were described by the patents. The line found by the surveyors for the plaintiff was some four or five feet farther to the southeast than that found by the surveyors for the defendant. If the former was the true line, the apex was wholly within the Washington territory; but if the latter was the true line, the apex was at least partially within the Cook. The right to follow a vein on its dip into territory belonging to another, is depend-

ent upon the full ownership of the apex, and the departure of the vein from the side line of the owner's claim, the end lines of which must be parallel.

The jury found for the defendants; and if the only question submitted to them had related to the true location of the line between the claims, and the consequent situation of the apex with reference to the claims, we would be without authority to disturb their verdict.

The court, among other instructions, gave the following:

"No. 7. The jury is instructed that in applying the law to the surface area of any lode location, there are but two classes of lines, namely: end lines and side lines; the end lines perform the office of determining the length of vein which a claim may have upon its strike; the side lines perform the office of defining the surface area of said location; and all lines that are not end lines are side lines. The end lines of a claim must be parallel to each other in order to give to the lode location any extralateral right by virtue of its having within its surface area the top or apex of any lode. And if you believe in this case that any lode has been shown to enter the Washington claim at any point other than across one of its parallel end lines, and the said lode in its strike does not reach either one of said end lines, then and in that case the plaintiff is bound by the vertical planes of said location, and cannot pursue said vein upon its dip beyond the surface boundaries thereof."

That instruction first defined the conditions upon which the owner of an apex would be entitled to follow the vein on its dip beyond the side line of his claim, and then submitted the question whether such conditions existed in this case. The definitions were simply introductory to the submission, and explanatory of the question the jury were to deter-

mine. They had no other significance, so that the instruction must stand or fall as a whole. As a merely abstract statement of the law, and of questions which might arise upon the law as stated, the instruction may be correct; but there was no evidence in the case to warrant it. The end lines of the Washington for the purposes of its extralateral rights were those laid upon the ground when it was located. The fact that its northeast end line crossed territory belonging to other and older valid locations, is immaterial. The line so laid was nevertheless its end line for the purpose of securing to it underground or extralateral rights not in conflict with the senior locations.—*Del Monte M. & M. Co. v. Last Chance M. & M. Co.,* 171 U. S. 55.

Now, it was undisputed that this end line was parallel with the other end line of the Washington; and it was undisputed that the lode did enter the Washington location across its end line. The evidence left no question of parallel or other end lines, or a crossing of the Washington end line by the lode, for the jury to determine. The instruction was calculated to divert the attention of the jury from the real issue, to one which was not in the case. It would naturally lead them to suppose that there was something in the evidence which would warrant them in finding that the end lines were not parallel, or that the lode did not cross the Washington end line. With a map before them showing an irregular line formed by the end lines of the Bobtail and Fisk within the Washington location, bounding territory which belonged to them and not the Washington, they may have supposed that that line constituted the Washington northeastern end line; and, as it was nowhere parallel with the other end line of the Washington, they may have felt impelled to find for the defendant, notwithstanding they may have believed that

the apex was wholly within the surface boundaries of the Washington. An instruction which assumes the existence of evidence which was not given, or submits a question not in the case, is erroneous.— *Gibbs v. Wall,* 10 Colo. 153; *Burlock v. Cross,* 16 Colo. 162; *Railroad Co. v. Robinson,* 6 Colo. App. 432.

But it is said that the plaintiff cannot now avail itself of the error, because the instruction was met by no proper exception. It was excepted to as follows: "The plaintiff excepts to the giving of instruction No. 7, as asked by the defendant and given by the court." This exception follows the instruction. If we understand counsel correctly, the objection to the foregoing exception is that it does not specify the grounds on which it was taken. The precise question here made was considered by the supreme court in *Ritchey v. The People,* 23 Colo. 314. There, as here, the instructions were in writing, in separate paragraphs, and separately numbered, and were excepted to as follows: "To the giving of which instructions, and to each and every of them, the defendant, by his counsel, then and there duly and severally excepted." It was held that such exceptions to instructions given in writing, and which were separately paragraphed and numbered, were sufficient. The court, however, drew a distinction between the case of written instructions separately paragraphed and numbered, and the case of one general charge delivered orally, citing, *Keith v. Wells,* 14 Colo. 321; *Edwards v. Smith,* 16 Colo. 529; *Miller v. People,* 22 Colo. 530; in which such exceptions to a charge which was oral and general were adjudged insufficient, and saying: "These cases proceed upon the basis that an oral charge is not as carefully prepared as a written charge, and that counsel being listeners are more apt to detect errors than the court."

That case was followed by this court in *Bradbury v. Alden,* 13 Colo. App. 208, and the same ruling applied to an exception separately taken to one of the instructions in the following form: "To the giving of which instruction the plaintiff then and there excepted." These cases are decisive of the question here raised, unless they are overruled, as counsel insists they are, by the more recently decided case of *Beals v. Cone,* 27 Colo. 473.

Upon a careful examination of the latter case we are unable to discover any inconsistency between it and the others. The following quotation from the opinion in that case shows clearly what the question before the court was, and what was its ruling on that question:

"At the conclusion of the instructions given by the court of its own motion, which embraced the one under consideration, an exception in this form was preserved: 'To the giving of which instructions, and to each and every thereof, the plaintiff by his counsel then and there duly excepted.' This is equivalent to saving an exception to each instruction separately, but it cannot avail as against any instruction to which it is directed, which contains a correct statement of the law, because it is insufficient to point out that which is incorrect from that which is correct. Without attempting to state fully the instruction which contains the direction of which appellant complains, it is sufficient to say that it embraces other distinct statements of law, which are manifestly correct. Therefore, the exception noted was wholly insufficient to present the question for review, which it is now sought to have us pass upon and determine."

By an analysis of the foregoing excerpt, we find that the court held that the effect of a general exception to each and every of the instructions is the

same as a separate exception to each instruction; but that a purely general exception to an instruction containing a correct statement of the law is insufficient; and that where an instruction embraces more than one legal proposition, one of which is correct, the exception must be directed specially to the proposition or propositions which counsel regards as incorrect. The question of the necessity of stating the specific grounds of objection was not before the court; but upon the question which was before it, it affirmed the necessity of designating the specific portion of an instruction good in part and bad in part, to which objection is intended to be directed; and its decision went no farther than this. We may say, however, that the restriction by the court of its ruling as to the effect of the exception it was considering, to the case of an instruction which was partly correct, carries with it an implication that such an exception to an instruction wholly incorrect, is sufficient. As we have seen, instruction No. 7 was, in view of the evidence, bad throughout; and, entertaining the views we have expressed, we are constrained to reverse the judgment.                    *Reversed.*

GUNTER, J., not sitting.